No. 30,077.

ANNIE CAZZELL, *Appellant*, v. BEN L. CAZZELL, *Appellee*.

(3 P. 2d 479.)

Opinion filed October 10, 1931.

*Alex McIntosh,* of Kansas City, for the appellant.

*William Drennan* and *Joseph A. Lynch,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from an order of the district court on a motion to amend the journal entry of a judgment in a divorce case so as to have it speak precisely what the court decreed concerning a division of property between the litigants.

The pertinent facts were these: Plaintiff and defendant were married many years ago. By their joint efforts they accumulated a six-room house and its appurtenant ground in Kansas City, Kan., and three acres of land with a two-room cabin on it in Clay county, Missouri. When the divorce was granted on July 2, 1930, the Kansas City property was set apart to plaintiff and the Missouri property to defendant. To make such division practically effective, so far as concerned the Missouri property, it was deemed advisable by the court to require plaintiff to quitclaim to defendant all her interest in it, but the journal entry containing the court's decree did not so recite.

Following the decree the plaintiff, being securely in possession and enjoyment of the Kansas City property separately decreed to her, commenced to harass her ex-husband with unconscionable and baseless claims of an interest in the Missouri property. To terminate that annoyance, on September 17, 1930, defendant filed this motion to amend the decree *nunc pro tunc* so as to have it state explicitly that plaintiff was required in the division of property to execute a proper deed of conveyance to the Missouri property to defendant.

On November 8, 1930, this motion came on for hearing and after statements and arguments of counsel for both parties the court sustained the motion, holding that it was the intent and purpose of the court on July 2, 1930, to require plaintiff to execute a deed to the Missouri property, and that the omission of such requirement from the divorce decree was a mere oversight and mistake, and the court ordered the decree amended *nunc pro tunc* to that effect and directed the plaintiff to execute a deed to the Missouri land in favor of defendant.

Plaintiff appeals. The gist of her complaint is that the trial court *changed* the decree after the close of the term at which it was

rendered and at a time when it had lost jurisdiction of the cause and of all matters incidental thereto.

Of course, a trial court has no jurisdiction to *alter* a judgment when it has become final and absolute by the close of the term at which it was rendered. But it is begging the question to assume that the proceedings above narrated constituted an alteration of the judgment.

Plaintiff contends that there was no proof to support the application for the *nunc pro tunc* order. We think the circumstances themselves had considerable probative force. Moreover, the trial judge's own recollection of the facts was the equivalent of testimony. In *Christisen v. Bartlett,* 73 Kan. 401, 84 Pac. 530, it was said:

"A district court has the power to correct the entry of a judgment so as to cause it to speak the truth after the expiration of the term at which it was rendered, and upon the personal knowledge of the judge of what took place in court at the time of its rendition." (Syl. ¶ 1.)

In *State, ex rel., v. Lyons,* 106 Kan. 860, 862, 189 Pac. 976, it was said:

"Moreover, if the trial judge had been positive as to the accuracy of his own recollection of the incident, his personal knowledge would have been equivalent to evidence."

See, also, *Investment Co. v. Walsh,* 70 Kan. 899, 79 Pac. 688; *Hart v. Hart,* 98 Kan. 745, 746, 747, 161 Pac. 585; 34 C. J. 245; 15 R. C. L. 678.

These authorities, which could be indefinitely multiplied, recognize the established rule that where matters which are an essential part of a judgment are inadvertently omitted from its written text, with the effect that it does not fairly state what the court intended, or perverts that intention, they can be corrected and supplied at the instance of an interested party after the close of the term at which the judgment was rendered. Indeed no lapse of time, however long, will preclude the correction of the judgment roll so as to make it speak precisely what the court intended. A notable instance of the application of this rule appears in the case of *Rogers v. Bigstaff's Executor,* 176 Ky. 413, where the *nunc pro tunc* order was made fifty-five years after the rendition of the judgment. (See, also, 1 Freeman on Judgments [5th ed.] 220 *et seq.*)

It should be observed that the *judicatory* portion of the judgment is not affected by the order made *nunc pro tunc*. There can be no

cavil that the court divided the property accumulated by the litigants as alleged in defendant's motion for the *nunc pro tunc* order. It is only the *executory* portion of the judgment in the instant case which requires elaboration to make the court's decree effective. (15 R. C. L. 678.)

The ruling of the trial court was correct, and its judgment is affirmed.