No. 39,126

EMMA MATHEY, *Appellant*, v. CHARLES H. MATHEY, *Appellee*.

(264 P. 2d 1058)

Opinion filed December 12, 1953.

*Henry H. Asher*, of Lawrence, argued the cause, and *C. L. Hoover*, of Junction City, and *Myron S. Steere*, of Ottawa, were with him on the briefs for the appellant.

*U. S. Weary*, of Junction City, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: In this action the wife sued for divorce, division of property and alimony.

It appears the domestic life of the parties had been a' turbulent one. In appellee's opening statement the trial court was advised he would not contest the divorce and in that connection made the following statement:

This was the fourth divorce action. The first was dismissed. The second was tried and a divorce was granted. Thereafter the parties remarried. During pendency of the third action the parties effected a reconciliation and made a property settlement. They later concluded a further attempt to reconcile their differences was hopeless. On November 21, 1951, plaintiff filed the instant action.

It appeared the parties, with the urging of their respective attorneys, had agreed not to unduly expose their respective charges of misconduct to the public again. Enough testimony was introduced by plaintiff together with corroborating testimony to justify a decree of divorce in her favor. Defendant has not appealed from the decree of divorce. The plaintiff has appealed from that part of the judgment pertaining to a division of property and also contends the court erred in refusing to award alimony.

As a result of the property settlement in the former divorce action the parties jointly owned the three pieces of real estate involved in the instant action. Appellant also owned real estate which she had acquired in the 1946 divorce action. That property was set aside to her in the instant decree as property owned by her prior to the last marriage.

Only one witness, a real estate man, testified relative to the value of the three properties involved. That testimony consisted of a prepared statement of the witness introduced by appellant with appellee's consent. One of these properties had been quite well refurnished with new carpeting and other articles within the last year prior to the filing of this divorce action. It was valued at $7,500. It appears the two other properties were valued by the witness as $3,000 and $3,500 respectively.

The court's memorandum opinion which was made a part of its decree recited it had valued those two properties at $3,200 and $3,200.50 respectively. A subsequent *nunc pro tunc* order, which will be treated later, disclosed those figures were inadvertently trans-

posed; that on the basis of the testimony of the witness the court had fixed the value of those two properties at $3,250 each or $6,500 for both, the total value therefor being the same as that placed thereon by the witness. The court awarded the $7,500 property to appellant and the two last mentioned properties valued at $6,500 to appellee.

No testimony was offered by either party relative to the value of the furnishings in any of the three properties. The values fixed by the witness were accepted by the court as embracing the real estate and furnishings in each case. We find no testimony in the record as to the rental value of any of the three properties. The court also awarded appellant a one-half interest in the rent account which the parties owned jointly. It awarded appellant a 1948 Pontiac car owned by appellee upon which no specific value was placed by any testimony. Appellee owned a mortgage on a country club. The unpaid balance thereon was $2,000. The court awarded appellant a one-half interest therein.

The court awarded appellee a 1951 Pontiac car, which he owned. No value was placed on it in the testimony. No order was made relative to a very small bank account owned separately by each of the parties. The decree was rendered February 21, 1953.

It seems appellant did not order a transcript of the proceedings on the motion for a new trial. The supplemental transcript of that proceeding, set forth in the counter abstract, discloses appellant's counsel who tried the case, not counsel who argued the appeal here, objected on that hearing to the division of property and argued that no alimony had been allowed to appellant; that the word alimony did not appear in the memorandum opinion.

The trial court stated:

"It is probably true that the memorandum which was filed in this case was unskillfully drawn. It certainly was prepared with both a division of the property, and of alimony. The difference in value of the properties awarded to the plaintiff and those awarded to the defendant, plaintiff receiving the larger amount, was what the court intended to be the amount of alimony allowed.

"In view of all of the circumstances disclosed by the evidence in the case, I feel that the allowance so made was fully justified and the court is still satisfied with it, and the motion for new trial will be overruled."

Trial counsel for appellant thereupon stated he found fault ". . . with the reasonableness of the *allowance of the alimony*. . . ." (Our italics.)

After the hearing on the motion for new trial the journal entry

of judgment was submitted by trial counsel for appellant to counsel for appellee without the journal entry having been redrafted to reflect clearly the fact the court had made an alimony award and of what such award consisted. Counsel for appellee informs us he approved the journal entry without making a careful examination thereof.

When counsel for appellee received the abstract and brief of appellant filed in this court he discovered one of appellant's contentions was that no alimony award had been made. He thereupon filed a motion for an order *nunc pro tunc*, which was more than two court terms after the rendition of judgment.

The motion, in substance, alleged that notwithstanding counsel for appellee had approved the journal entry he did not believe it correctly set forth the findings of the court as made by it and did not realize until February 14, 1953, it contained the clause, "that Defendant, disregarding his duties and marriage vows, has been guilty of gross neglect of duty and extreme cruelty. . . ."

The court's memorandum opinion, however, did contain the above quotation and the court overruled the motion insofar as it asked for a change in the judgment. The order further reads:

"The memorandum filed in this case on the 21st day of February, 1953, was unskillfully drawn for which the court takes full blame, and contains some clerical errors, and in one or two instances there are obscurities which require clarification.

"The testimony of Richard J. Brown, a real estate dealer in Junction City, was read into the record by the attorney for the plaintiff with the consent of the attorney for the defendant, in Mr. Brown's absence. That testimony was the only evidence of values of the properties involved that was presented by either side. That testimony stated that the properties at 112 East 2nd Street and 219 East 8th Street, were each of the value of 'from 3000.00 to $3500.' Upon this testimony the values of the two properties was fixed by the court at $3250.00 each, or $6500.00 for both. In some manner that figure was entered in the memorandum and the journal entry as '$#3200.50.' This was erroneous and was not called to the attention of the court until this motion was filed. Judgment *nunc pro tunc* is entered correcting those amounts in the memorandum and in the journal entry.

"The properties mentioned above and the property at 215 West 8th Street, which was valued at $7500.00 were all furnished rental properties. No evidence was introduced relative to the value of the furniture separate from the properties themselves, and it was assumed by the court that the values in evidence included the furniture. It was the judgment of the court at that time that the furniture in these properties go with the properties set over to the plaintiff and defendant. Judgment *nunc pro tunc* is entered that the furniture in each of these properties shall follow the properties in the division made.

"The three properties mentioned constituted all of the property held by these parties by joint ownership or by tenancy in common, except the rental account in the bank which was disposed of in the journal entry filed February 24, 1953. It was the judgment of the court at that time that the properties at 112 East 2nd Street and 219 East 8th Street, valued at $6500.00 be set over to the defendant, and that the property at 215 West 8th Street, valued at $7500.00 be set over to the plaintiff. It was the further judgment, although that is not clear in the wording of the journal entry, that the difference of $1000.00 in the value of the joint properties, plus the $1000 from the country club mortgage owned by the defendant plus the 1948 Pontiac automobile owned by the defendant were set over to the plaintiff as her permanent alimony in lump sum. Judgment *nunc pro tunc* is entered in accordance with the preceding paragraph."

From that order appellant also appealed. In view of the trial court's remark on the hearing of the motion for a new trial it is clearly apparent an alimony judgment had been rendered although the journal entry neither reflected that fact nor what the court regarded as alimony. It is also inescapable that trial counsel for appellant knew from the proceedings on the hearing of his motion for a new trial what the court's alimony judgment actually was. Such counsel expressly stated at that time:

". . . we object and find fault with the reasonableness of the allowance of the alimony. . . ."

There can be no question concerning the fact that the figures pertaining to the value of the two properties awarded to appellee constituted merely a clerical error and that they were properly ordered corrected.

A journal entry purports to be a record of the judgment rendered but it is not necessarily the judgment actually rendered. (*Tincknell v. Tincknell*, 141 Kan. 873, 44 P. 2d 212; *Perkins v. Ashmore*, 144 Kan. 540, 61 P. 2d 888; *Victory Life Ins. Co. v. Freeman*, 145 Kan. 296, 299, 65 P. 2d 559; *Bush v. Bush*, 158 Kan. 760, 150 P. 2d 168; *Hinshaw v. Hinshaw*, 166 Kan. 481, 486, 203 P. 2d 201.)

In the Tincknell case it was held:

"The proceedings considered in an action for divorce and alimony, in which the record disclosed a money judgment against plaintiff and in favor of defendant for $800, and *held,* the court was authorized to correct the record to show the judgment for $800 *was for permanent alimony."* (Syl. ¶ 1.) (Italics supplied.)

If the journal entry fails to accurately reflect the judgment actually rendered it is the duty of the court to make it speak the truth (*State v. Linderholm*, 90 Kan. 489, 135 Pac. 564; *Bush v. Bush,* supra,

p. 762, 763) and that may be done after the term in which the judgment is rendered (*Cazzell v. Cazzell*, 133 Kan. 766, 3 P. 2d 479; *Bush v. Bush*, supra; *Hinshaw v. Hinshaw*, supra) even though it be fifty-five years thereafter. (*Cazzell v. Cazzell*, supra, p. 768; *Bush v. Bush*, supra, p. 763.) In the Cazzell case it was held:

"Where matters which are an essential part of a judgment are inadvertently omitted from its written text, with the effect that it does not fairly recite what the court intended, and perverts that intention, the omitted matter may be supplied and the journal entry of judgment corrected even after the close of the term, at the instance of an interested party.

"When a motion for an order *nunc pro tunc* is pending, the trial judge's personal recollection of the facts and circumstances under which the judgment was rendered and of the court's purpose and intention in rendering it has the probative force of evidence bearing on the propriety of granting or denying the motion presented for determination." (Syl. ¶¶ 2, 3.)

To the same effect are *Schneider v. Schneider*, 147 Kan. 621, 78 P. 2d 16, and many other cases. Briefly stated, the purpose of a *nunc pro tunc* order is not to change or alter an order or judgment actually made. In other words its function is not to make an order now for then, but to enter now for then an order previously made. (*Schneider v. Schneider, Bush v. Bush, Hinshaw v. Hinshaw*, omnia supra.) The trial court did not err in making the journal entry speak the truth.

We are presently concerned only with alimony. It also may be well to observe that property owned by appellee and awarded to appellant, the wife, could be nothing other than alimony in a divorce action such as this in which the divorce is granted to the wife by reason of the fault or aggression of the husband. Alimony in this kind of action should not be confused with the latter part of G. S. 1949, 60-1511, which pertains to a division of property where a divorce is granted to the husband by reason of the fault or aggression of the wife. The first part of that statute, applicable here, pertains to alimony and provides:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden or former name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before her marriage or acquired by her in her own right after such marriage, and not previously disposed of, *and shall be allowed such alimony as the court shall think reasonable,* having due regard to the property which came to him by marriage and the value of his real and personal estate at the time of said divorce; *which alimony may be allowed to her in real or personal property, or both,* or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable." (Our italics.)

After having set aside to the wife, appellant, such property as the statute first directs, which was done here, the additional allowance made to the wife by the court could have been nothing other than alimony under the terms of the statute, whether it was expressly so designated or not. That part of the statute pertains only to alimony. It expressly provides alimony may be allowed to the wife in real or personal property, or both, as well as in the form of money. Here it was granted in the form of property. Of course, in order to avoid uncertainty it is well that the allowance be clearly designated as alimony in the journal entry of judgment. That was the purpose of the *nunc pro tunc* order in this case.

It also is observed the part of the statute pertinent to the facts of this case provides that where the divorce is granted to the wife the latter shall be allowed such alimony "as the court shall think reasonable, having due regard to the . . . value of his real and personal estate at the time of said divorce. . . ." Appellant's counsel contend this court has considered other factors than those especially designated in the statute in determining a proper alimony award. Assuming that is true such factors must find affirmative support in the record. We are limited on appeal to the facts contained in the particular record presented for review.

Although counsel for appellant concede their client is a trained nurse and has been engaged in that practice over a considerable number of years they direct attention to certain present physical handicaps. No doubt these facts and many others were considered by the trial court. Although the sufficiency of the alimony award might be debatable this court knows the trial court was in a far better position to obtain an accurate impression from the over-all facts and circumstances involved in the domestic life of the parties than this court can from cold abstracts of the record which seldom fully reflect important intangible factors.

The above statute vests the district court with wide judicial discretion in determining what it believes to be reasonable alimony under the facts of each particular case. Such discretion will not be disturbed on appeal unless it clearly appears from the entire record that its discretion has been abused. (*Carlat v. Carlat,* 168 Kan. 600, 602, 215 P. 2d 200, and cases therein cited.) See, also, Hatcher's Kansas Digest, Divorce & Separation, §§ 50, 83, and West's Kansas Digest, Divorce, §§ 235, 286.

We deem it unnecessary to review the numerous cases furnished by the industry of appellant's counsel. Many of them contain facts

and circumstances not found in the instant record. On the basis of the limited facts disclosed by the record now presented to us we think we would not be justified in reversing the district court on the theory it abused its judicial discretion in determining the alimony it allowed.

The judgment is affirmed.