No. 47,752

ELDON BOOK and ROBERTA BOOK, *Appellants,* v. EVERITT LUMBER COMPANY, INC., a Corporation, and PAUL GAY, d/b/a PAUL GAY CONSTRUCTION Co., *Appellees.*

(542 P. 2d 669)

Opinion filed November 8, 1975.

*John F. Christner,* of Romine and Christner, of Abilene, argued the cause and was on the brief for the appellants.

*Robert L. Marietta,* of Marietta and Kellogg, of Salina, argued the cause and was on the brief for appellee, Everitt Lumber Company, Inc.

The opinion of the court was delivered by

KAUL, J.: The litigation involved in this appeal was initiated by appellants-landowners, Eldon and Roberta Book, who filed an action under K. S. A. 60-1108, to secure early adjudication of a mechanic's lien filed by appellees against the Books' newly constructed house. This appeal is from an order *nunc pro tunc* entered by the trial court in the original action two years after the original action was terminated by an order sustaining the Books' motion for involuntary dismissal of an amended cross-petition filed by the defendant-appellee, Everitt Lumber Company, Inc. Appellee, Paul Gay Construction Company, is no longer involved in the litigation.

The Books entered into a contract with Everitt Lumber Company, Inc. (hereafter referred to as Everitt), whereby the latter agreed to supply various specified building materials to Books for the construction of a new house. The contract called for building materials in the total amount of $16,000.00 to be furnished by Everitt.

By the time their house was completed, Books had made payments to Everitt totaling $17,365.37 for materials furnished. Everitt, however, maintained that it still had money coming for "extras" consisting of materials furnished over and above those contemplated in the original written contract. In April 1971 Everitt filed a mechanic's lien statement asserting a lien against the property in the amount of $8,003.01 for materials furnished.

In October 1971 Books filed in district court of Dickinson County an action entitled "Petition to Adjudicate Liens" in which they contested the validity of Everitt's lien. Everitt filed an answer and cross-petition in which it alleged that it furnished materials for the Books' house in the sum of $25,368.38, of which $17,365.37 had been paid by Books, leaving a balance due of $8,003.01 plus interest. Everitt prayed that the lien and claim for principal and interest be ascertained and adjudged and the property be sold to satisfy the amount of the debt established by the court. Books filed a reply to Everitt's cross-petition in which they admitted payment of $17,-365.37 to Everitt, but denied there was any balance due and owing. In their reply Books alleged that the lien statement was deficient in numerous respects including lack of proper itemization.

After the pleadings were completed a pretrial conference was held on April 5, 1972. As a result of the conference a pretrial order was entered which, among other things, directed Everitt to furnish Books a detailed itemization to show all of the materials allegedly furnished and to specify all of the materials that were included under the $16,000.00 original contract, and to show any "extras" above that amount.

The pretrial order further stated that a later pretrial hearing would be conducted after the items referred to had been furnished to Books.

On June 5, 1972, Books filed a motion for involuntary dismissal of Everitt's counterclaim alleging that Everitt had failed to provide the itemization called for in the pretrial order and that by its non-action had violated an order of the court as proscribed by K. S. A. 1974 Supp. 60-241 (*b*) and (*c*), and that the counterclaim of Everitt should be involuntarily dismissed.

The trial court heard the motion on June 13, 1972, and on July 3, 1972, the court's order was journalized. The substance of the journal entry reads:

"WHEREUPON, the Court hears the Motion of Plaintiff for Involuntary Dismissal of the Amended Cross-Petition of Defendant, Everitt Lumber Com-

pany, Inc., and the Court after hearing arguments of counsel and being fully advised in the premises finds that said motion for Involuntary Dismissal as provided by K. S. A. 60-241 (*b*) (*c*) should be sustained and said Amended Cross-Petition dismissed.

"It is therefore, by the court, considered, ordered, adjudged and decreed That the Motion of both Defendants for continuance be and it is hereby denied; that the motion of Plaintiffs for involuntary dismissal of the Amended Cross-Petition of the Defendant, Everitt Lumber Company, Inc., be and the same is hereby granted and sustained one-half of the total costs of the above entitled action are hereby assessed against the Defendant, Everitt Lumber Company, Inc."

No appeal was taken from the order of dismissal.

We are informed in Everitt's brief that following the dismissal of the Dickinson County lawsuit it replaced some specially ordered materials which Books contended were not satisfactory and that thereafter Everitt filed an action against Books in the district court of Saline County. In this latter action, filed on December 26, 1973, Everitt alleged $8,0003.01 was due and owing on the bill for materials. Books filed an answer in the Saline County action on January 23, 1974, setting up the Dickinson County judgment of June 13, 1972, as a bar to the action. On April 17, 1974, the Saline County district court entered an order directing that the dispute over the construction and intention of the journal entry of June 13, 1972, be resolved by a *nunc pro tunc* proceeding by the judge who made the decision in the district court of Dickinson County. Neither party objected to, nor challenged, this order of the Saline County district court.

Thereafter, on May 31, 1974, Everitt filed a motion for an order *nunc pro tunc* in the district court of Dickinson County. The motion reads in pertinent part as follows:

"2. In support of said motion, the Defendant, Everitt Lumber Company, Inc., states that the adjudication the Court made in sustaining the motion of the Plaintiffs determined only the question of the Defendant's right to establish a lien on property owned by the Plaintiffs; that at no time did this Court make a judicial determination of the rights of the Defendant, Everitt Lumber Company, Inc., to pursue a claim for money judgment against the Plaintiffs.

"3. In further support of the motion, the Defendant, Everitt Lumber Company, Inc., states that the provisions of K. S. A. 60-241 (*b*) provides that if the Court is to render judgment on the merits, it must make findings as provided by Section 60-252 (*a*); that no findings of fact were made as shown in the Journal Entry of June 13, 1972.

"4. The Court, at no time, intended the Journal Entry of June 13, 1972, to be a determination of all of the rights of the parties to that action, and that a question has arisen as to the construction of the wording of the Journal

Entry of June 13, 1972. As a result of a clerical error, the Journal Entry of June 13, 1972, contains an omission to the extent that it does not state that the sustaining of the motion for involuntary dismissal determined only the rights of the Defendant to establish a lien on property owned by the plaintiffs.

"WHEREFORE, the Defendant, Everitt Lumber Company, Inc., prays for an Order *nunc pro tunc* modifying and correcting the Order of this Court dated June 13, 1972, in order that the same might accurately reflect the action taken by the Court on that date."

After a hearing on the *nunc pro tunc* motion the district court of Dickinson County granted the relief sought and specifically found that the dismissal of the cross-petition of Everitt was due to a failure by the defendant to properly establish the right to a lien on property owned by plaintiffs. The court's findings and comments in rendering its decision are reproduced in the record and supplemental record on appeal. The journal entry reads in pertinent part as follows:

"2. That the dismissal of the cross claim of the Defendant as reflected by the Journal Entry of June 13, 1972, was due to a failure by the Defendant to properly establish the right to a lien on property owned by the Plaintiff.

"3. That on June 13, 1972, this Court made no findings nor any adjudication of the rights of any of the parties to this action other than the right of the Defendant, Everitt Lumber Company, Inc., to establish a lien on the property, and that at no time did this Court make a determination as to whether any party was indebted to the other.

"4. That this action was initiated by the Plaintiff to adjudicate the validity of a lien which was causing a cloud on the title of real estate owned by the Plaintiff, and the Court determined that such lien was invalid and the question of the validity of the lien and the right of the Defendant to establish the same has been determined on the merits.

"5. That the Journal Entry of June 13, 1972, contains a clerical error in that it does not state that the dismissal of the cross claim of the Defendant, Everitt Lumber Company, Inc., determined only the issue of the Defendant to establish a mechanic's lien on property owned by the Plaintiff.

"IT IS, THEREFORE, BY THE COURT, CONSIDERED, ORDERED, ADJUDGED AND DECREED that the Order of this Court dated June 13, 1972, be, and the same is hereby modified *nunc pro tunc* to provide that the dismissal of the Defendant, Everitt Lumber Company, Inc.'s cross claim determined only the right of the Defendant, Everitt Lumber Company, Inc., to establish a mechanic's lien on property of the Plaintiff, and no other adjudication was made to determine any other rights of the parties to this action. The Order of June 13, 1972, is, therefore, modified and corrected to the extent that the same is consistent with the findings expressed herein."

Thereafter Books perfected this appeal. While Everitt specifies a number of points on appeal its principal argument is that the *nunc pro tunc* order was erroneous in that the clarification by the court was not to correct clerical mistakes.

K. S. A. 60-260 (*a*) governs the correction of judgments by *nunc pro tunc* orders. It reads:

"(*a*) *Clerical mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the record on appeal is filed in the supreme court, and thereafter while the appeal is pending may be so corrected with leave of the supreme court."

While revising prior statutes (G. S. 1949, 60-3007, *et seq.*) this subsection effected no change in the case law pertaining to *nunc pro tunc* proceedings developed by this court. It actually amounts to codification of the rules regarding correction of errors set out in many prior decisions. Subsection (*b*) of K. S. A. 60-260 provides certain statutory instances in which a judgment may be modified after judicial error has been committed, but the case law regarding clerical errors remains as it existed prior to the enactment of the statute.

The issue presented is whether the *nunc pro tunc* order in the instant case operated to correct a clerical error or did it effect a change in the original judgment. The general rule in testing clerical errors versus judicial errors is set out in the recent case of *Wallace v. Wallace*, 214 Kan. 344, 520 P. 2d 1221. A *nunc pro tunc* order may not be made to correct a judicial error involving the merits, or to enlarge the judgment as originally rendered, or to supply a judicial omission, or an affirmative action which should have been, but was not, taken by the court, or to show what the court should have decided, or intended to decide, as distinguished from what it actually did decide. The power of the court is limited to making the journal entry speak the truth by correcting clerical errors arising from oversight or omission and it does not extend beyond such function. (See 46 Am. Jur. 2d, Judgments, § 201, pp. 443, 444.)

Books rely heavily upon our decision in *Wallace*. The *Wallace* case was a divorce action in which the husband appealed from a *nunc pro tunc* order made by the trial court changing an alimony judgment to a property division judgment. In the opinion it is pointed out that at the *Wallace* trial both parties, in open court, requested that $7,500.00 be awarded to the wife as alimony and in compliance with the request the court signed a journal entry to that effect. In the opinion we said:

". . . Undoubtedly, the court knew the amount of the award was to equalize the property awarded the husband. Notwithstanding this knowledge,

there can be no valid argument that it was not the court's intention to make the award alimony as requested by the parties. . . ." (p. 349.)

We held that the *nunc pro tunc* motion should have been denied since the order was not correcting a clerical error and that any attempt by the court, under the guise of correcting clerical error to revise its deliberately exercised judicial discretion, is not permitted.

The *nunc pro tunc* order in *Wallace* actually changed are original judgment awarding alimony to a judgment for the division of property. The change in the judgment effected by the order entered in *Wallace* is readily distinguishable from the effect of the order in the instant case which worked no change, but, at most, merely supplied an omission. The circumstances of the case at bar are more analogous to those existing in *Mathey v. Mathey,* 175 Kan. 446, 264 P. 2d 1058, than to the facts of the *Wallace* case. In *Mathey* the court granted a divorce to the plaintiff wife and in the journal entry awarded certain real and personal property to each of the parties without designating whether the award to wife constituted alimony or a division of property. Subsequently, the court by *nunc pro tunc* order supplied the omission and corrected the journal entry to show that the excess money awarded to the wife was actually permanent alimony. In sustaining the order on appeal we held:

"Where a journal entry of judgment does not clearly reflect what property, or an interest therein, was actually allowed to the wife as alimony an order *nunc pro tunc* may be entered to make it speak the truth and such order may be made after the term in which the judgment was rendered." (Syl. ¶ 5.)

What was the original judgment of the court in the instant case? The action was one to adjudicate the claimed liens of the appellees. An examination of the pleadings and the pretrial order discloses that the controlling issue as to Everitt was the validity of its lien. One of the secondary issues stated in the pretrial order was whether Everitt's lien was itemized to the extent required by statute. Concerning this issue, the trial court ordered Everitt to furnish a detailed itemization of all materials allegedly furnished. Everitt's failure to comply with the court's order was the basis for Books' motion for involuntary dismissal under K. S. A. 1974 Supp. 60-241 (*b*) and (*c*). An order of dismissal under 60-241 (*b*), with certain exceptions not applicable here, operates as an adjudication upon the merits. The order in the instant case constituted a judgment on the merits that Everitt's claimed lien was invalid. However, the record reflects that the posture of the case, when the motion to dismiss was presented, was such that the sole issue involved was the validity of

the lien, thus, this was the extent of the judgment. The *nunc pro tunc* order cannot be said to be an attempt by the court, under the guise of correcting clerical error to revise its deliberately exercised judicial discretion. The only judicial discretion exercised in the instant case was in adjudicating the validity of Everitt's lien.

Arguments in support of points two and six are combined. Books contend the motion for a *nunc pro tunc* order was not filed within a reasonable time and that Everitt was guilty of laches. A short answer to these contentions is found in the language of 60-260 (*a*) to the effect that errors and mistakes arising from omission may be corrected by the court *at any time*. The import of this statutory language is reaffirmed in *Wallace v. Wallace,* supra, wherein the court quotes with approval a statement appearing in *Mathey,* which reads:

" 'If the journal entry fails to accurately reflect the judgment actually rendered it is the duty of the court to make it speak the truth [citations omitted] and that may be done after the term in which the judgment is rendered [citations omitted] even though it be fifty-five years thereafter. . . .' " (p. 348.)

The quote in *Mathey* was first stated in *Cazzell v. Cazzell,* 133 Kan. 766, 3 P. 2d 479 in these words:

". . . Indeed no lapse of time, however long, will preclude the correction of the judgment roll so as to make it speak precisely what the court intended. A notable instance of the application of this rule appears in the case of *Rogers v. Bigstaff's Executor,* 176 Ky. 413, where the *nunc pro tunc* order was made fifty-five years after the rendition of the judgment. . . ." (p. 768.)

We find no basis in the facts of the instant case which supports an argument of laches or failure to act within a reasonable time.

Books state their third point on appeal in these words:

"The Court erred on June 12, 1974, in vacating the judgment of June 13, 1972, when the rights of the appellant had become final."

As we have previously pointed out, the judgment was merely that Everitt's lien was invalid. Neither the judgment nor any part thereof was vacated by the order *nunc pro tunc* which merely restated the judgment originally rendered.

Finally, Books claim error in the granting of the *nunc pro tunc* motion when no record of the hearing was made and absent the introduction of any evidence in support thereof. While the court heard oral arguments of counsel, it is evident from the court's ruling that it relied on its own personal recollection as a basis for

granting the order *nunc pro tunc*. In this connection, in announcing its ruling, the court stated:

"Well, I remember the lawsuit quite well. And as has been stated by both counsel, it was an action for the early adjudication of a mechanic's lien which was casting a cloud as long as it was unresolved on the plaintiffs' title to their real estate. That's the relief that was asked for. . . ."

It is well-established by a number of Kansas cases that a trial court may properly rely upon its own recollection when considering a motion *nunc pro tunc*. In speaking for the court in *Ramsey v. Hand,* 185 Kan. 350, 343 P. 2d 225, cert. den. 362 U. S. 970, 4 L. Ed. 2d 901, 80 S. Ct. 956, Mr. Justice Schroeder said:

"When a motion for an order *nunc pro tunc* is pending, the trial judge's personal recollection of the facts and circumstances under which the judgment was rendered and of the court's purpose and intention in rendering it has the probative force of evidence bearing on the propriety of granting or denying the motion presented for determination. . . ." (p. 360.)

In the early case of *Christisen v. Bartlett,* 73 Kan. 401, 84 Pac. 530, it was held:

"A district court has the power to correct the entry of a judgment so as to cause it to speak the truth after the expiration of the term at which it was rendered, and upon the personal knowledge of the judge of what took place in court at the time of its rendition." (Syl. ¶ 1.)

The probative value of the trial judge's recollection as evidence in a *nunc pro tunc* proceeding was also expressly recognized in *State, ex rel., v. Lyons,* 106 Kan. 860, 189 Pac. 976, and *Cazzell v. Cazzell,* supra.

When considering an appeal from a trial court's order *nunc pro tunc* in *Tincknell v. Tincknell,* 141 Kan. 873, 44 P. 2d 212, Justice Burch speaking for the court had this to say:

"A judgment is one thing. The record of a judgment is a different thing, and what purports to be the record of a judgment may or may not be correct. When the question of correctness of the record is raised, the court must determine the matter as any other question of fact, except that the court's own knowledge of what the judgment was may be utilized and may be conclusive. In this instance this court cannot say the district court did not know what the judgment was, and the authority of the district court to make the record speak the truth by *nunc pro tunc* entry has been declared in so many cases that it is needless to cite them." (pp. 876, 877.)

From the record before us we are unable to say that the district

court did not know what the judgment was and its authority, under the circumstances, to make the record speak the truth by *nunc pro tunc* order is well-established.

The judgment is affirmed.

MILLER, J., not participating.