No. 90,378

In the Matter of the Marriage of DANA L. LEEDY, n/k/a DANA WASSAR, *Appellant/Cross-appellee,* and ROBERT D. LEEDY, *Appellee/Cross-appellant.*

109 P.3d 1130

Opinion filed April 22, 2005.

*Robb W. Rumsey,* of Rumsey & Cleary Law Offices, of Wichita, argued the cause and was on the brief for appellant.

*Charles F. Harris,* of Kaplan, McMillan and Harris, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a postjudgment proceeding in a divorce action. Dana L. Leedy, n/k/a Dana Wassar, appealed from the trial court's order recalculating Robert D. Leedy's child support arrearage. Leedy cross-appealed the trial court's award of attorney fees to Wassar in the contempt proceeding. The Court of Appeals, concluding that Leedy's relief is limited to 1 year by K.S.A. 60-260(b), reversed and remanded on the issue of recalculation and affirmed the award of attorney fees. We granted Leedy's petition for review.

There is no dispute about the facts.

Wassar and Leedy were married in 1990 and had three children—Kayla, Kyle, and Koby, born in 1993, 1995, and 1997. Wassar and Leedy were divorced in 1999. Wassar was given primary residential custody of the children, and Leedy was ordered to pay a fixed amount of child support beginning January 1, 1999.

There were a number of posttrial hearings on child support. In February 2002, the trial court found that Leedy owed $5,619 in unpaid child support and $874.05 in unpaid medical expenses and that Leedy was in contempt for failure to pay. The trial court ordered him to pay $857 in attorney fees to Wassar. The trial court denied Wassar's request for an order restraining Leedy from seeking information about her expenses.

In October 2002, Leedy filed a motion requesting the trial court set aside the child support portion of the February 2002 order. Leedy contended that the order was not supported by a child support worksheet and there were significant errors in the arrearage calculation. He requested that the historical child support be recalculated due to mathematical errors and material misstatements. Leedy amended his motion to include a request that Wassar be required to prove actual child care expenses since January 1, 1999.

At a November 2002 hearing on his motion, Leedy argued that Wassar had claimed significantly higher child care expenses than were actually expended, that in consequence the arrearage calculation was in error, and that the arrearage calculation could and should be revised pursuant to K.S.A. 60-260(b). Wassar admitted

overstating child care expenses and the existence of errors and stated her lack of objection to the amounts for 2001 being set aside. The trial court sustained Leedy's motion to set aside the February 2002 order and directed the parties to recalculate the child support amount back to January 1, 2000, using actual child care and medical expenditures.

Wassar filed a motion to reconsider the November 2002 order. Leedy requested the trial court to set aside the February 2002 order for attorney fees.

In March 2003, the trial court denied Wassar's motion and found that Leedy had overpaid his child support in the sum of $1,730.77 as a result of the overstatement of day care costs. The trial court found that Wassar had overstated the costs beginning January 1, 2000, and had ceased to have any day care expenses after August 1, 2002. Finding that Wassar's overstatements of monthly day care costs constituted a significant mathematical error in the previous arrearage calculation and that Wassar should have disclosed the error as a matter of equity, the trial court adjusted Leedy's child support payments beginning February 1, 2003, to reflect the corrected figures. The trial court also corrected the amount owed by Leedy for the children's medical expenses from $874.05 to $364.93 and denied Leedy's request to set aside the order for attorney fees.

Wassar appealed the trial court's order recalculating child support and arrearage. Leedy cross-appealed the trial court's award of attorney fees to Wassar.

The Court of Appeals concluded that the trial court improperly recalculated Leedy's child support for approximately 3 years. The Court of Appeals remanded for further proceedings and with directions to limit relief to 1 retroactive year, pursuant to K.S.A. 60-260(b). The Court of Appeals affirmed the trial court's refusal to set aside the order for attorney fees.

Wassar first contended that the trial court retroactively modified the child support and that retroactive modification is prohibited by statute and case law. Leedy defended the trial court's action as a statutorily permissible recalculation of child support necessitated principally by mathematical errors. The Court of Appeals, although declaring its decision "not satisfying," agreed with Wassar that the

trial court impermissibly modified the amount of child support for approximately 3 years retroactively. Slip op. at 9. The Court of Appeals remanded for further proceedings and with directions to limit relief to 1 retroactive year, pursuant to K.S.A. 60-260(b). Slip op. at 9.

A ruling on a motion for relief from judgment filed pursuant to K.S.A. 60-260(b) rests within the sound discretion of the trial court. The trial court's ruling will not be reversed in the absence of a showing of abuse of discretion. *In re Marriage of Zodrow*, 240 Kan, 65, Syl. ¶ 2, 727 P.2d 435 (1986); *Logan v. Logan*, 23 Kan. App. 2d 920, 930-31, 937 P.2d 967 (1997).

The trial court issued two orders that figure into this issue on appeal. First, on February 25, 2002, on Wassar's motion of accusation in contempt, the trial court made the following pertinent findings and ordered Leedy to pay accordingly:

"1. That [Leedy] shall be found in contempt for failure to pay the full amount [of] child support as ordered by this Court and for failure to pay his portion of uninsured medical expenses of the minor children.

"2. That [Leedy] shall pay [Wassar's] attorney fees in the amount of $875.00. The parties agree that attorney fees shall be included in child support arrearage and paid along with child support and medical reimbursement.

"3. That there is an existing arrearage of $7,350.05 which shall be paid at $200 per month until paid in full. That this amount includes unpaid child support of $5,619.00; unpaid medical expenses of $874.05; and attorney fees of $857.00."

Second, on March 7, 2003, the trial court made the following findings and ordered the parties to act accordingly:

"2. . . . . [B]ased upon the Child Support Worksheets prepared . . . on behalf of [Leedy] and . . . [Wassar] . . . through January 8, 2003, [Leedy] has overpaid his child support in the sum of $1730.77 as a result of the overstatement in daycare costs.

"3. That [Leedy] overpaid his total child support obligation as a result of substantial overstatements of the monthly daycare in previous orders of the Court, going back to January 1, 2000, which the Court finds as a matter of equity, should have been disclosed by [Wassar], and which constitute a significant mathematical error in previous arrearage calculation.

"4. That the Court finds that [Wassar] stopped having any daycare expense August 1, 2002.

. . . .

"6. That the Court finds that the correct [amount] in medical expenses as of February 25, 2002, was $364.93.

"7. That the Court denies [Leedy's] request to set aside the order for attorney fees dated February 25, 2002, and further denies [Leedy's] request for an award of attorney fees incurred in prosecuting his motion to modify the arrearage."

Leedy contends that subsection (a) of 60-260, which permits corrections at any time, is the appropriate mechanism for correcting mathematical errors. K.S.A. 60-260(a) provides in part: "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." This provision does not limit relief to 1 year.

Leedy's rationale for the application of subsection (a) is that Wassar's incorrect child care costs were included in the child support worksheet, in the findings of the trial court, and the mathematical calculation of child support and thus produced an erroneous child support figure. K.S.A. 60-260(a), however, is limited to *clerical* mistakes by its plain language as well as by statutory history and case law. In other words, to instances where the order fails to accurately reflect the judgment actually rendered. In *Book v. Everitt Lumber Co., Inc.*, 218 Kan. 121, 125, 524 P.2d 669 (1975), the court observed that 60-260(a) codifies the nunc pro tunc procedure for modifying a judgment:

"The general rule in testing clerical errors versus judicial errors is set out in the recent case of *Wallace v. Wallace*, 214 Kan. 344, 520 P.2d 1221 [(1974)]. A *nunc pro tunc* order may not be made to correct a judicial error involving the merits, or to enlarge the judgment as originally rendered, or to supply a judicial omission, or an affirmative action which should have been, but was not, taken by the court, or to show what the court should have decided, or intended to decide, as distinguished from what it actually did decide. The power of the court is limited to making the journal entry speak the truth by correcting clerical errors arising from oversight or omission and it does not extend beyond such function. [Citation omitted.]" 218 Kan. at 125.

The court went on to contrast the trial court's action in the *Wallace* divorce case with that of the trial court in *Mathey v. Mathey*, 175 Kan. 446, 264 P.2d 1058 (1953), *overruled in part on other grounds Garver v. Garver*, 184 Kan. 145, 334 P.2d 408 (1959),

describing the former as actually changing the original judgment and the latter as working no change, but, at most, merely supplying an omission. Both *Wallace* and *Mathey* involved the issue of categorization of property division and alimony awards, rather than child support payments.

The order in the present case that Leedy would have the court characterize as made pursuant to the authority of K.S.A. 60-260(a) actually constituted an affirmative action that changed the original order to reflect what the trial court should have decided, had it possessed correct information. The March 2003 order is not an order that merely clarified what the court actually had decided in February 2002. Because the March 2003 order is not an order made for the purpose of accurately reflecting the judgment actually rendered in the February 2002 order, the Court of Appeals correctly concluded that the trial court's March 2003 order was not authorized by K.S.A. 60-260(a).

Leedy also contends that the trial court's March 2003 order did not constitute a modification of the amount of child support, and, therefore, the rule stated in *In re Marriage of Schoby*, 269 Kan. 114, Syl. ¶ 1, 4 P.3d 604 (2000), that modification of the amount of child support may only operate prospectively does not apply. The February 2002 order was a ruling on Wassar's accusation in contempt. The order established that Leedy was in contempt on account of his failure to make some previously ordered payments and calculated the amount of his arrearage, which consisted of unpaid child support, unpaid medical expenses, and Wassar's attorney fees for prosecuting the accusation in contempt. The order included a paragraph that decreased child support to $1,217 per month, but that part of the order is not at issue. Nor was that provision of the February 2002 order even mentioned in the March 2003 order. The second order corrected the statement in the first order that Leedy had an arrearage of $5,619 to the statement that he had overpaid by $1,730.77 and attributed the mistake to Wassar's overstatements of child care costs beginning January 1, 2000. The second order also corrected the amount of unpaid medical expenses as of the date of the first order from $874.05 to $364.93.

There is no provision in the March 2003 order that stated a modification in the amount of child support.

On the other hand, the trial court's correction of the arrearage necessarily was based on a modification of child support amounts because one of the figures used to calculate child support is the cost of work-related child care. When the actual child care expenses were used instead of the inflated ones reported by Wassar, the amount of child support owed by Leedy was decreased. It was only by decreasing the amount of Leedy's child support that the trial court erased his arrearage.

Leedy also argues that the trial court's March 2003 order did not constitute a modification of the amount of child support because it was merely the correction of mathematical errors. The premise of his argument is that, under the Kansas Child Support Guidelines, the calculation of child support is essentially a mathematical matter based on the figures supplied to the trial court. The problem in this case is that the figures supplied to the trial court by Wassar were inaccurate. Thus, there was no error in the mathematical computation of the supplied figures. The error in Leedy's child support was a consequence of Wassar's overstating child care costs, not miscalculation.

In addition, Leedy would have the court find significance in the trial court's failing to attach a child support worksheet to the February 2002 order. Leedy cites Administrative Order No. 180, Kansas Child Support Guidelines § I, which provides that the net parental child support obligation is calculated by completing a child support worksheet and that Section E of the worksheet shall be included in the journal entry as the trial court's written findings when the child support adjustments are used to modify the rebuttable presumption of a reasonable child support amount. (2004 Kan. Ct. R. Annot. 99.) He also cites *In re Marriage of Schletzbaum*, 15 Kan. App. 2d 504, Syl. ¶ 3, 809 P.2d 1251 (1991), which provides:

"The rebuttable presumption as to the child support to be ordered may be overcome, but any decision of the trial court which deviates from the amount dictated by the Kansas Child Support Guidelines must be supported by written

findings in Section E of the worksheet or specific findings on the record, which shall be included in the journal entry, setting forth the reason for any deviation."

The February 2002 order constituted a ruling on Wassar's accusation in contempt. The substance of the ruling was the finding that Leedy was in contempt for his failure to pay child support of $5,619 and medical expenses of $874.05 and the order that he pay at a fixed amount per month these amounts plus the attorney fees incurred by Wassar in prosecuting the accusation in contempt. As already noted, there was a provision for the decrease of Leedy's monthly child support payment that is not at issue. That part of the trial court's February 2002 ruling that is before this court does not include a calculation of Leedy's child support obligation. The authorities he cites require attachment of the child support worksheet to the journal entry only for the calculation of child support and, in fact, only for certain calculations of child support.

Leedy argues that the Court of Appeals' rejection of his argument that the February 2002 order should be set aside because it was filed without a worksheet attached conflicts with a decision of another panel of the Court of Appeals, *In re Marriage of Mellott*, 32 Kan. App. 2d 1031, 93 P.3d 1219 (2004). The cases are not comparable. In *Mellott*, the trial court recalculated the child support obligation of Paul Mellott, including a $100 per month downward adjustment based on Paul's poor financial condition, as described by his attorney. In the *Mellott* circumstances, the district court was required to use Section E of the worksheet to make written findings to support the adjustment. In contrast to *Mellott*, the present case does not involve an adjustment or deviation from the Child Support Guidelines, which require the supporting findings supplied by the child support worksheet.

Section V.(A.), provides in part: "A parent shall notify the other parent of any change of financial circumstances including, but not necessarily limited to, income, work-related child care costs, and health insurance premiums which if changed could constitute a material change of circumstances." (2004 Kan. Ct. R. Annot. 118.) Leedy contends that by including this provision in its Administrative Order demonstrates that the Supreme Court intended that the

disclosure requirement be enforced, and, in order to enforce the requirement, there must be a remedy for nondisclosure. Leedy urges the court to consider K.S.A. 60-260(b)(6) as that remedy.

K.S.A. 60-260(b) provides in part:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under K.S.A. 60-259(b); (3) fraud. . . , misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . . This section does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, . . . or to set aside a judgment for fraud upon the court."

In the Court of Appeals, in arguing that the trial court erred in granting relief to Leedy, Wassar relied entirely on K.S.A. 2004 Supp. 60-1610(a)(1) and case law applying it. The statute provides in part: "The court may make a modification of child support retroactive to a date at least one month after the date that the motion to modify was filed with the court." Accordingly, the Supreme Court has stated that modification of the amount of child support may only operate prospectively, *In re Marriage of Schoby*, 269 Kan. 114, Syl. ¶ 1, due to child support payments becoming final judgments on the dates they become due and unpaid, *Gardner v. Gardner*, 22 Kan. App. 2d 314, 315, 916 P.2d 43, *rev. denied* 260 Kan. 992 (1996). Wassar's reliance, however, fails to take into account that the purpose of K.S.A. 60-260 is to provide relief from judgments or orders.

In the Court of Appeals, Leedy cited *In re Marriage of Thomas*, 16 Kan. App. 2d 518, 825 P.2d 1163 (1992), in support of his position that K.S.A. 60-260(b)(6) provided relief. In *Thomas*, the trial court divided the assets of Barbara and Alonzo Thomas, awarding the principal residence subject to all encumbrances to

her and other properties to him. Two months later, after learning that there was a substantial second mortgage on the residence, Barbara sought modification under K.S.A. 60-260(b) on the grounds of newly discovered evidence, fraud, misrepresentation, and/or misconduct of Alonzo. The trial court concluded that, had it been aware of the second mortgage at the time it divided the assets, it would have ruled differently and, accordingly, modified the decree so that Barbara received the residence subject only to the first mortgage.

On Alonzo's appeal of the modified decree, the Court of Appeals affirmed. But the Court of Appeals concluded that the trial court should not have granted relief on the basis of newly discovered evidence, K.S.A. 60-260(b)(2). 16 Kan. App. 2d at 523-24. The Court of Appeals instead characterized the need for the modification as a misunderstanding of the factual situation. 16 Kan. App. 2d at 526. Thus, the Court of Appeals concluded "that the modified decision by the trial court is the correct decision and that the trial court had the authority to grant the relief under K.S.A. 60-260(b)(6)." 16 Kan. App. 2d at 525. The Court of Appeals continued: "To hold otherwise would be to perpetuate the existence of an inequitable division of property, which was based on a misunderstanding of the true facts." 16 Kan. App. 2d at 526.

In the present case, the Court of Appeals distinguished *Thomas* on the following ground:

"The difference between *Thomas* and this case is that here, the trial court corrected the misunderstanding of the factual situation by modifying the child support order. Considering the nature of the child support order which becomes final on every due date and the modification can only be prospective, it is questionable the *Thomas* ruling would apply to the facts in this case." Slip op. at 8-9.

In these words, the Court of Appeals seems to be drawing a distinction between an order dividing property and a child support order on the ground that child support payments become final judgments on the dates they become due and unpaid. *Gardner*, 22 Kan. App. 2d at 315. But consideration of the Court of Appeals' conclusion on this issue, which allows for relief for a limited period, suggests that the distinction actually was based on the length of

time elapsed between the judgment(s) and the request for relief. The Court of Appeals stated:

"It seems none of the provisions in K.S.A. 60-260(b)(1) through (6) provided a vehicle for the trial court to modify the child support order as much as it did.

"The result of this decision is not satisfying. It appears that the child care expenses were substantially overstated. This led to child support orders larger than they should have been. However, we believe we are bound by the rule set out in *In re Marriage of Schoby*, 269 Kan. 114, Syl. ¶ 1, 4 P.3d 604 (2000), that actual modification of the amount of child support can only be prospective. Giving these matters some finality is a legitimate aim. We must remand this matter to the trial court for further proceedings consistent with this opinion and the time limitations under K.S.A. 60-260(b) which apparently limits relief to a maximum of 1 year." Slip op. at 9.

The above distinction, as stated by the Court of Appeals, is conflicting and confusing. First, the express purpose of K.S.A. 60-260 is to provide relief from judgments. Although recognizing the applications and limitations of K.S.A. 60-1610 as interpreted in *Brady v. Brady*, 225 Kan. 485, Syl. ¶ 2, 592 P.2d 865 (1979), the Court of Appeals in *In Re Marriage of Hunt*, 10 Kan. App. 2d 254, 697 P.2d 80 (1985), granted relief from an original maintenance judgment. Mr. Hunt failed to notify the court that he had been reemployed full-time after the final hearing but before the decree was entered. The trial court granted Mrs. Hunt's motion for relief pursuant to K.S.A. 60-260(b) and the Court of Appeals affirmed, holding:

"Proceedings to modify a divorce decree based on matters occurring after the decree are to be brought under K.S.A. 60-1610 and are subject to its limitations. However, where relief is sought because of facts existing at the time of the decree which, if known to the court, would have brought about a different result, relief is available under K.S.A. 60-260(b)." 10 Kan. App. 2d at 259.

We see no reason why this distinction should not be applied to a child support judgment as well as a maintenance judgment.

Second, not all the subsections of 60-260(b) are subject to a 1-year limitation. By the express terms of 60-260, all the subsections are subject to a reasonable time requirement, but only subsections (b)(1), (2), and (3) are subject to a 1-year limitation. See *In re Marriage of Larson*, 257 Kan. 456, Syl. ¶ 2, 894 P.2d 809 (1995) (disapproving language in *Thomas* to the effect that the reasonable

time requirement did not apply to K.S.A. 60-260[b][1], [2], and [3]).

Leedy argued in the Court of Appeals that the catch-all subsection, 60-260(b)(6), authorized the trial court's correction of his child support obligation from an arrearage to an overpayment. The Court of Appeals also noted that Leedy had not argued for relief under 60-260(b)(1), (2), or (3). Slip op. at 7. What is not actually stated in the Court of Appeals' opinion but seems to be presumed is that relief is available to Leedy only under subsections (1), (2), or (3).

In the present case, with the issue arising out of Wassar's overstatements of child care costs, one's first impression might be that subsection (b)(3), relief for fraud or misrepresentation ought to apply. The record, however, contains little information about Wassar's overstatements of child care. The extent of information from the record is that Wassar's attorney stated during the November 2002 hearing that "we don't object to the 2001 being set aside, we admit there were some errors there. . . . The 2000 order, Mr. Leedy was represented by Mr. Harris at the time, she was represented by Ms. Gilman. They based it on what the actuals were at that time and what the projected was." In other words, no intention to misrepresent the child care costs can be inferred from Wassar's attorney's statement. In addition, Leedy does not allege or argue that Wassar committed fraud or misrepresentation in overstating the child care costs.

Subsection (b)(3) also applies to "other misconduct of an adverse party." We also know from the record that the trial court found Wassar should have disclosed the erroneous child care costs as a matter of equity. Clearly, Wassar should have disclosed that the child care costs she reported were erroneous as a matter of equity and in satisfaction of Administrative Order No. 180's requirement that she notify Leedy of any change in work-related child care costs. Wassar's failure to disclose the error resulted in a judgment against Leedy for an arrearage of thousands of dollars, which he in fact did not owe. We conclude that, in these circumstances, her failure to disclose the error constitutes misconduct that would support relief from judgment under 60-260(b)(3). An order setting aside a

judgment could be upheld under K.S.A. 60-260(b)(3) even though neither the moving party nor the trial court specified that section. *In re Estate of Hessenflow*, 21 Kan. App. 2d 761, 909 P.2d 662 (1995), *rev. denied* 259 Kan. 928 (1996).

Having concluded that Wassar's failure to disclose the error constituted misconduct of an adverse party within the meaning of K.S.A. 60-260(b)(3), then the catch-all provision, subsection (6), is not available to Leedy. In *State ex rel. Secretary of SRS v. Keck*, 266 Kan. 305, Syl. ¶ 1, 969 P.2d 841 (1998), the court stated:

> "The general rule applied by both state and federal courts is that the first five grounds of K.S.A. 60-260(b), that are specific, and the sixth, that is the general catch-all, are mutually exclusive. A party cannot circumvent the 1-year limitation applicable to the first three grounds of K.S.A. 60-260(b) by invoking the residual clause (subsection [6]). K.S.A. 60-260(b)(6) is not available if the asserted grounds for relief are within the coverage of another provision of K.S.A. 60-260(b)."

Having concluded that Leedy's relief is available under (b)(3), the question whether Leedy's request for relief was made within a reasonable time must be addressed. See *In re Marriage of Larson*, 257 Kan. 456, Syl. ¶ 2. In this case, whether Leedy's request for relief was made within a reasonable time does not seem to have been considered by the trial court with application of K.S.A. 60-260(b) in mind. At a hearing in February 2003 where the trial court entertained counsel's arguments on granting Leedy relief from the February 2002 order, Wassar asserted that Leedy had enjoyed the benefit of unreported income from a second job and his support obligation not having been increased despite one of his children advancing an age bracket. Wassar's main argument was that, if child care costs are reexamined, all the factors that go into the calculation of child support ought to be reexamined. Wassar also argued that the financial advantage Leedy enjoyed motivated him to delay questioning her child care costs. There was no evidence offered on the length of or reasons for delay. The trial court seems to have treated Wassar's assertion and arguments as an oral motion and denied it. Implied in the trial judge's ruling is a determination that Leedy's request for relief was timely enough to forestall reexamination of amounts other than child care costs. There was no men-

tion, however, of the reasonableness of the timing of his request, nor were the requirements of K.S.A. 60-260(b) cited.

In *Wilson v. Wilson*, 16 Kan. App. 2d 651, Syl. ¶ 6, 827 P.2d 788 (1992), *rev. denied* 250 Kan. 808 (1992), the Court of Appeals stated the following standard for reasonableness: "What constitutes a 'reasonable time' for seeking relief from a judgment depends on the facts of each case; relevant considerations include whether parties have been prejudiced by the delay and whether good cause has been shown for failing to take action sooner." Measured by the standard stated in *Wilson*, it appears that prejudice from delay is not an issue here where Wassar had the benefit of Leedy's overpayment. Whether good cause has been shown for Leedy's failing to take action sooner is not as clear. The first indication in the record on appeal that Leedy questioned child care costs reported by Wassar or attempted to verify them is in the February 2002 order. As part of that order, the trial court denied Wassar's request for an order restraining Leedy from seeking information about her expenses. Thus, it is reasonable to infer that sometime before February 2002 Leedy began questioning Wassar's reported expense figures and that he made efforts to verify them. If there were circumstances that ought to have led Leedy to mistrust Wassar's reported figures at an earlier date, they are not apparent from the record. In October 2002 Leedy filed a motion seeking to require Wassar to prove actual child care expenses since January 1, 1999. There is no suggestion in the record why Leedy waited until October 2002 to request proof of child care costs after Wassar's request for a restraining order was denied by the trial court in February 2002. At the November 2002 hearing on his motion, Leedy argued that Wassar had significantly overstated her child care expenses, that in consequence the arrearage calculation was erroneous, and that the arrearage calculation could and should be revised pursuant to K.S.A. 60-260(b). Based on the record we conclude that Leedy's request for relief was made within a reasonable time.

We next consider whether the trial court abused its discretion in refusing to set aside the award of attorney fees.

In February 2002, the trial court ordered Leedy to pay $857 in attorney fees to Wassar. On cross-appeal Leedy argued that the trial court abused its discretion in later refusing to set aside the February 2002 award of attorney fees to Wassar. Wassar did not brief the issue.

The assessment of attorney fees lies within the sound discretion of the trial court, and its determination will not be reversed on appeal absent a showing of an abuse of discretion. *Fletcher v. Anderson*, 29 Kan. App. 2d 784, 786, 31 P.3d 313 (2001).

On this issue, the Court of Appeals stated the following:

"[Leedy] did not appeal the award of attorney fees within the prescribed time after the decision was entered. When he filed a motion to set aside the order filed February 25, 2002, he alleged the order should be set aside because the child support calculation was not supported by the worksheet and there were significant errors in the arrearage calculation. However, he did not allege the award of attorney fees should be set aside.

"At the hearing, [Wassar] argued that in the February 25, 2002 order, the trial court did not state the attorney fees were awarded because of the contempt— they could have been awarded because of her financial situation or other reasons. The court agreed and refused to set aside the award of attorney fees.

. . . .

"[Leedy's] sole argument is that the trial court would never have made the attorney fees award if it had been aware of the mathematical errors in the child support obligations. This is not supported by anything in the record." Slip op. at 10-11.

Leedy merely asserts that the Court of Appeals erred in upholding the trial court's refusal to set aside the award of attorney fees. He offers no reasons why the Court of Appeals' rationale is unsound. We find no abuse of discretion.

Judgment of the Court of Appeals affirming in part, reversing in part, and remanding to the district court is affirmed. Judgment of the district court is affirmed in part, reversed in part, and remanded.

NUSS and GERNON, JJ., not participating.

JACKSON, S.J., and LARSON, S.J., assigned.