NOT DESIGNATED FOR PUBLICATION

No. 125,656

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of L.S.,
*Appellee/Cross-Appellant*,

and

D.J.,
*Appellant/Cross-Appellee*.


Appeal from Leavenworth District Court; DAN K. WILEY, judge. Oral argument held October 17, 2023. Opinion filed May 31, 2024. Reversed and vacated.

*Joseph W. Booth*, of Lenexa, for appellant/cross-appellee.

*Ronald W. Nelson*, of Ronald W. Nelson PA, of Overland Park, for appellee/cross-appellant.

Before ISHERWOOD, P.J., GREEN and PICKERING, JJ.

ISHERWOOD, J.:  This case comes before us with challenges advanced by both parties. The issue D.J. asks us to resolve is whether the district court had the authority to modify the parties' final divorce decree to include what amounted to an interlocutory order for D.J. to pay L.S. nearly two years of temporary child support that was not previously ordered. L.S. cross-appealed and first contends that the district court erred when it set aside the relevant portion of the parties' separation agreement pursuant to K.S.A. 60-260(b), where the proper vehicle was to simply reform the agreement under K.S.A. 23-3005. She further asserts that the district court failed to go far enough back in time when it backdated D.J.'s child support obligation. Following a careful review of the record and a thorough analysis of the issues alongside guiding legal principles, we

1

conclude the district court employed the proper legal mechanism when it set aside D.J.'s original child support obligation under K.S.A. 60-260(b) following revelations of miscalculations in the child support worksheet. We further find the district court abused its discretion when it entered an order for temporary child support after the conclusion of the litigation. Accordingly, we reverse the decision of the district court and vacate that portion of the child support order that requires D.J. to pay temporary child support from March 2020 through December 2021.

FACTUAL AND PROCEDURAL BACKGROUND

L.S. and D.J. were married in 2005 and shared a 12-year marriage which gifted them with two children. In late 2017, L.S. filed for divorce. Her petition included a domestic relations affidavit (DRA), minus any child support adjustments, and she did not attach a child support worksheet. It also included her affirmative statement that the parties could maintain the status quo during the pendency of the case and, therefore, an order for temporary child support was not warranted. But L.S. maintained that financial support for the children would be necessary once the divorce was finalized.

In June 2018, the district court held a hearing on the parties' proposed Parenting Plan, Stipulation, and Property Settlement Agreement. L.S. informed the district court that the parties had reached a settlement agreement on all issues and were ready to proceed with the final hearing. She then provided the district court with a child support worksheet and a proposed divorce decree. When the district court asked D.J. whether this was also his understanding, D.J. responded that he had not seen the settlement agreement and was unsure what its terms entailed. The district court inquired a second time in an effort to clarify whether the parties had truly reached an agreement on all issues. D.J. simply stated, "I gave her whatever she wants." The district court repeated its question a third time and D.J. again replied, "Whatever—I agree with whatever she says." L.S.'s

2

attorney then interjected to note that L.S. provided a copy of the agreement to D.J. on several occasions.

The district court asked D.J. whether he wanted to go forward with the hearing to which D.J. responded, "I'll sign whatever she would like me to sign." The district court explained that it was not attempting to pressure him into proceeding if he was not ready to do so but acknowledged from D.J.'s despondent behavior that he appeared determined to conclude the divorce litigation as quickly as possible.

The district court went forth and accepted testimony from both parties concerning the settlement agreement. L.S. testified that she submitted a child support worksheet requesting $4,077 per month in child support and a lifelong order for maintenance in the amount of $3,748 per month. For his part, D.J. reiterated that he had not read the agreement but understood its provisions primarily favored L.S., which was an outcome he could accept so long as it made her happy.

At the conclusion of the proceeding, the judge declined to approve the proposed agreement, finding that the lifelong maintenance provision bore notes of unconscionability. He clarified that he was not objectively opposed to long-term maintenance agreements but, in this instance, it appeared D.J. was not protecting himself and the court felt compelled to intercede. The judge explained the potential risks of obligating oneself to such prolonged payments and expressed concern about D.J.'s current state of mind and well-being. He set a date for a new hearing and directed the parties to reconsider the length of maintenance, as well as any other conditions or contingencies that would protect their respective interests.

The parties reconvened several weeks later, at which time L.S. was present with her attorney, but D.J. was neither personally present nor did he appear through counsel. L.S. informed the court that the parties modified their settlement agreement, and its

current terms contemplated that D.J. would pay monthly maintenance in the amount of $3,748 for a term of 10 years. Additionally, pursuant to the child support worksheet L.S. submitted, D.J. would be responsible for $4,077 in monthly child support with May 1, 2018, set as the start date. The court approved the settlement agreement, adopted its terms as part of the final divorce decree, and filed the decree on July 16, 2018. At that point, L.S.'s counsel withdrew, citing resolution of all matters involved in the case.

Roughly five months later, D.J. retained counsel who requested records and transcripts of the case. Not long after, in February 2019, his attorney filed a motion for relief from judgment under K.S.A. 60-260(b) and argued that the divorce decree should be set aside due to material misrepresentations L.S. made about the parties' income and employment to buttress her requested amounts for final maintenance and child support. In support of his contentions, D.J.'s counsel asserted that L.S. did not leave her job as she claimed and, despite the fact she only alleged a monthly income of $1,257 in her child support worksheet, she actually earned far more, with a year-end total of $115,461 for 2018. Counsel for D.J. further noted that L.S. also misrepresented D.J.'s income on that worksheet in asserting that he made an estimated $20,000 per month in 2018 when, in reality, D.J.'s 2018 tax returns reflected that he made only $40,750 for the entire year. Thus, D.J.'s counsel took the position that L.S. intentionally misled the district court in pursuit of the nearly $8,000 she requested in combined monthly maintenance and child support.

L.S. filed a response and denied D.J.'s fraud allegations. She admitted that she did not leave her job but claimed that her plan to resign fell through when D.J. became suicidal after the final hearing. L.S. also acknowledged that the worksheet contained errors regarding the parties' income but claimed her first attorney was solely responsible for those miscalculations. The district court held a two-day hearing on D.J.'s motion and upon its conclusion requested additional briefing from the parties.

4

Several months later the district court granted D.J.'s motion for relief from judgment pursuant to K.S.A. 60-260(b)(6) and set aside the parties' settlement agreement. In support of its conclusion, the district court reasoned that it should never have approved the child support worksheet because the document mistakenly reversed who was responsible for paying child support and which party was entitled to receive maintenance. Next, the district court determined the maintenance provision was not equitable under the relevant statutory factors once the parties' true incomes were revealed. Finally, it expressed concern with what it perceived to be an inequitable division of property.

In February 2020, three months after the court granted D.J.'s motion to set aside the parties' agreement, L.S. filed a motion for temporary child support accompanied by a revised child support worksheet and domestic relations affidavit. The new worksheet set forth L.S.'s and D.J.'s annual earnings at $100,000 and $240,000, respectively, with a request for $3,097 in monthly child support. In June of that year, the district court held a hearing limited to parenting time issues and noted that it would not entertain any arguments regarding, nor would it decide, the issue of temporary child support that day.

Over a year later, the parties met for a final pretrial conference and the district court approved their pretrial order. That order clarified that neither party was seeking spousal maintenance, expressed their intent to exchange updated domestic relations affidavits, and advised that both parties would file their respective child support worksheets ahead of the final hearing. The parties' order also stated that there were no outstanding pretrial motions at that time and made no mention of temporary child support.

In November 2021, the district court held a final hearing on the issues of property division and child support as set forth in the pretrial order. L.S. informed the district court that she filed a motion for temporary child support which had not been heard yet but did

not expressly request a decision. At the end of the hearing, the district court announced that it would take the case under advisement.

The district court ultimately issued a decision that included an order for D.J. to pay $2,562 in monthly child support beginning January 1, 2022. In arriving at that figure, the court relied on the monthly incomes set out in the most recent versions of the parties' respective worksheets, $1,250 for L.S. and $10,994 for D.J.

A few weeks later, L.S. filed a motion to alter or amend and to clarify under K.S.A. 60-259. She claimed the district court failed to rule on her motion for temporary child support and requested a judgment of $92,232 to cover temporary child support from January 1, 2019, through December 31, 2021. D.J. responded that L.S. neglected to preserve the issue of temporary child support in the parties' pretrial order and failed to request a ruling on the matter at trial. The district court received oral arguments on L.S.'s motion but ultimately requested additional briefing from the parties.

In April 2022, L.S. filed a memorandum in support of her motion to alter or amend and claimed that D.J. was obligated to pay temporary support once the district court set aside the child support order contemplated by their settlement agreement. She further argued there was sufficient evidence presented of D.J.'s income at that time for the district court to simply reform the child support order to include temporary child support. D.J. responded and clarified that the district court declined to simply reform the child support order back then until L.S. filed a motion for temporary support. And while L.S. eventually filed such a motion, she never requested a hearing and did not raise the issue as part of the pretrial order or bring the matter to the court's attention during the trial.

Two months later, the district court held a second hearing on L.S.'s motion to alter or amend. After hearing from both parties, it granted L.S.'s motion and amended its final child support order to reflect that D.J.'s financial obligation began in March 2020. It

6

explained that L.S. filed her motion for temporary support in February 2020, but the court ran out of time at the June hearing so it did not reach the issue, but it fully intended to take up the matter later. The court informed the parties that had it followed through on that intention it would have ordered D.J. to provide temporary child support. Then, because a temporary order would have been in place, the issue would necessarily have been part of the pretrial order. It concluded that the most reasonable solution was for the child support order to reflect a beginning date of March 2020 in order to encompass what would have been temporary support. Accordingly, D.J. was ordered to pay $2,562 in temporary child support for each month between March 1, 2020, and December 31, 2021—a judgment totaling $56,364.

D.J. now brings the case to us and requests an analysis of the propriety of the district court's inclusion of the alleged arrearages in its modified final child support order. L.S. cross-appeals seeking our opinion concerning the district court's decision to set aside the child support portion of the parties' initial settlement agreement under K.S.A. 60-260(b) rather than merely modifying the provision.

LEGAL ANALYSIS

*The district court abused its discretion when it reopened its final order in response to L.S.'s motion to alter or amend judgment pursuant to K.S.A. 60-259(f) and backdated D.J.'s child support obligation to include arrearages for temporary child support that was not previously litigated or imposed.*

The first issue we are tasked with resolving is D.J.'s contention that the district court erred as a matter of law when it amended its final judgement to include an order for temporary child support arrearages when no such interlocutory order was ever imposed. L.S. counters that the district court properly executed a simple modification of its child support judgment in response to her K.S.A. 60-259(f) motion and the only actual error associated therewith is the district court's refusal to choose an even earlier start date.

7

Because the issue of temporary child support was not litigated prior to trial, discussed at the pretrial conference, included in the pretrial order, or addressed at trial, the district court's child support order must be vacated.

Kansas appellate courts review a district court's decision on a motion to alter or amend judgment under K.S.A. 60-259(f) for an abuse of discretion. *Florez v. Ginsberg*, 57 Kan. App. 2d 207, 218, 449 P.3d 770 (2019). Similarly, appellate courts generally review a district court's child support award for an abuse of discretion. *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 257, 452 P.3d 392 (2019). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022).

As noted above, the parties disagree in their characterization of the district court's action. By ordering child support for the period of March 2020 to December 2021, D.J. claims the district court retroactively granted L.S.'s motion for temporary support after the court's final order was entered. Conversely, L.S. argues the district court did not grant the motion for temporary child support but instead merely amended the final child support order so that the start date for D.J.'s obligation to pay simply shifted from January 2022 to March 2020.

We do not find L.S.'s argument persuasive. First, the plain language of her motion seeking an alteration or amendment is cued specifically to a grant of her earlier request for temporary child support:

> "8. The Court announced its decision after the trial of this matter on December 16, 2021. However, the court indicated the beginning date for child support payments would be January 1, 2022—the first of the month following the Court's announcement of its oral decision. The Court apparently did not recall that a motion asking for child support pending the final hearing had been filed—which would mean that in addition to

the judgment for prospective child support starting January 1, 2022, a judgment for temporary child support for the period from and after January 1, 2019, should have been made and entered.

"9. [L.S.] asks that the Court alter and amend its journal entry of property division, maintenance, and child support to provide a judgment for child support for the period from January 1, 2019 until December 31, 2021 in a monthly amount the same as that entered to begin on January 1, 2022, for a total judgment for temporary child support in the amount of $92,232 (3 years times 12 months times $2,562/month) when [D.J.] was not paying any support to [L.S.]."

We are equally unpersuaded that in granting L.S.'s motion the district court intended to accomplish something other than entry of an order for temporary support and, notably, well beyond the temporal boundaries in which such relief is permitted. The transcript from the hearing on L.S.'s motion for reconsideration reflects that the district court acknowledged there were no temporary orders for child support in this case and that such support is waived "if it's not raised generally at trial." The court noted that L.S. filed a motion for temporary support two years earlier but then it opted to shoulder the blame for that motion's procedural shortcomings. Specifically, the court stated, "We had a hearing where that was scheduled and noticed up. And the Court, because of the other issues we had, simply ran out of time that day," and "The Court's intention was to take it up another day, and then, ultimately, that never happened I think maybe partially because the Court didn't schedule it and partially because it was never requested to be scheduled." The court acknowledged that the request for temporary support was not raised in the pretrial order nor was it presented at trial, so deeming the issue waived was one possible ruling it could enter. Yet, the court went on to resolve the issue in the following manner:

"I think what hasn't been waived, and the Court, I think, bears at least some responsibility here was there was a motion filed in February of 2020 that was noticed up, and the Court, because of its own time constraints, was not able to take it up. And even though that specific issue wasn't raised in the pretrial, I think that set of facts leads the

9

Court to believe that the Court should've taken it up. The Court would've issued temporary orders of child support, and if those had been ordered, if the Court had had a hearing on that, then that issue would have been either raised at the pretrial because there'd either have been payments made or payments not made, and there would've been a temporary order in place.

"And so I think, from the facts of this case, what makes the most sense from a legal standpoint is to go back to March 1st of 2020 and issue child support from that date forward. So the Court is going to order that child support be ordered from March 1st of 2020, and that it be in the amount that was determined to be effective January of 2022. I had that amount in front of me a little bit ago, but it escapes me, and I think it's in the motion filed also, which is 2562 a month. And so you would have, essentially, 9 plus 12 or 21 months of arrearage at 2562 a month, and the Court'll grant a judgement for child support from the time period of March 1st of 2020 to December 31st of 2021 in that amount of 21 times the 2562—I'll give you that amount—which is $53,802.

The conclusion the court ultimately arrived at was not one that was legally available to it. First, in making its determination, the court opted to view the facts through a lens that enabled it to arrive at the conclusion it believed was the most equitable. But the record does not completely undergird its interpretation of the facts. Rather, it reflects that L.S. filed her motion seeking temporary support, then over a year passed before the final trial, and not once during that extended period did L.S. request a hearing on her motion pursuant to Supreme Court Rule 133(c)(1) (2021 Kan. S. Ct. R. 215). Thus, it was not "noticed up" as the court asserted. While the court did have the option under that rule to set it for hearing on its own accord, had L.S. taken the initiative to request it, "the court *must grant* a timely request for oral argument *unless* it states in the ruling or by separate communication that oral argument would not aid the court materially." (Emphases added.) Rule 133(c)(1) (2021 Kan. S. Ct. R. 215). Thus, from the outset, L.S. did not vigorously pursue the relief she believed she was entitled to.

10

*The district court's action runs afoul of K.S.A. 2023 Supp. 60-216.*

The court also acknowledged that L.S. failed to ensure the issue of temporary support was included in the pretrial order or raised at trial and recognized that typically such an approach would result in waiver of the issue. But for reasons that are not clear, the district court essentially declined to adhere to that principle here. For a district court's discretionary decision to receive a full measure of deference, the district court must have based its decision on a correct understanding of the law. *In re Marriage of Welter*, 58 Kan. App. 2d 683, 688, 474 P.3d 786 (2020). We are not convinced that occurred here. Rather than conclude that the issue was waived as a result of L.S.'s failure to pursue the matter beyond the filing of her motion, the court fashioned a scenario that did not exist in order to grant L.S. the relief she initiated but never pursued. That is, the court found that had the motion been set for hearing:

> "The Court would've issued temporary orders of child support, and if those had been ordered, if the Court had had a hearing on that, then that issue would have been either raised at the pretrial because there'd either have been payments made or payments not made, and there would've been a temporary order in place."

The absence of a pretrial hearing did not absolve L.S. of her obligation to make certain the issue was included in the pretrial order or otherwise litigated at trial and the sequence of hypothetical events conjured by the court is not how the case evolved.

The Kansas Family Law Code directs that the district court "shall conduct a pretrial conference or conferences in accordance with K.S.A. 60-216, and amendments thereto, upon request of either party or on the court's own motion." K.S.A. 23-2709. That pretrial conference was conducted in this case on July 22, 2021, at which time both parties assured the court: "*There are no pretrial motions at this time.*" (Emphasis added.) L.S. made no mention of her earlier motion for temporary support. Accordingly, a pretrial

11

order was drafted which limited its discussion of child support to updated DRAs and child support worksheets.

Under K.S.A. 2023 Supp. 60-216, a pretrial order entered by the district court is a binding order designed to control the subsequent proceedings unless modified to prevent manifest injustice. *Gudenkauf Tree Svc. v. Jacobs*, No. 122,028, 2021 WL 2603385, at *4 (Kan. App. 2021) (unpublished opinion). It provides district courts with a critical tool that defines and clarifies the issues so that the element of surprise may be significantly reduced, if not wholly eliminated, thereby ensuring the parties receive a fair trial. See *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 708, 317 P.3d 70 (2014). Thus, "[a]n issue or claim for relief that is not contained in the pretrial order should not be entertained by the trial court." *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 19, 61 P.3d 68 (2002).

*In re Marriage of Merz*, No. 96,042, 2007 WL 656420, at *1 (Kan. App. 2007) (unpublished opinion), provided this court with the opportunity to resolve an issue similar to that which is presently before us. In that case, Donna Merz filed a divorce petition from her husband, Brian, and requested equitable division of the parties' assets, joint legal custody of the minor children, child support, and spousal maintenance. In her pretrial questionnaire, however, neither Donna's fact issues nor her legal questions made any mention of or reference to spousal maintenance. A pretrial conference was held and ultimately a pretrial order was issued which did not contain any references to spousal maintenance, consistent with the parties' questionnaires.

The case proceeded to trial and Donna's counsel inquired during her testimony about the amount she sought in maintenance. Counsel for Brian objected on the grounds that maintenance was not among the issues identified in the pretrial order. Donna's attorney countered that it was always an issue and a point of frequent discussion with opposing counsel. The district court found it was bound by the pretrial order and

sustained the objection. At the conclusion of Donna's evidence, her counsel requested an amendment to the pretrial order to prevent manifest injustice. The district court denied the request noting that Brian would suffer a manifest injustice if the issue were included as he had no notice that a claim for maintenance would be presented at trial.

Donna appealed and asserted the district court erred when it denied her request to amend the pretrial order and asserted that a determination concerning maintenance could have been made with the evidence already presented at trial without the need to offer anything additional. This court found that while it presented a close question, the record nevertheless reflected the complete absence of any discussion concerning maintenance in the pretrial conference, a failure by Donna to rectify the missing claim in the 30 days between the pretrial conference and the trial date, and no suggestion for a continuance by Donna's attorney to afford opposing counsel the opportunity to sufficiently prepare for the new issue. Accordingly, it declined to find the court abused its discretion when it denied Donna's request to amend the pretrial order. *In re Marriage of Merz*, 2007 WL 656420, at *4.

This case similarly presents a series of neglected opportunities by L.S. to ensure her issue of temporary child support was addressed. The district court's effort to insulate her from the consequences of her inaction was an abuse of discretion.

Our conclusion is also consistent with the longstanding law of this state. In the underlying divorce action analyzed in *Calkins v. Calkins*, 155 Kan. 43, 44, 122 P.2d 750 (1942), the wife failed to present a claim for the balance that was past due on a previous order of separate maintenance that directed the husband to make $70 monthly maintenance payments until further order of the court. Prior to entry of the divorce decree, the husband had paid $425. A balance of $415 remained due on that order when the wife obtained the final divorce decree along with a $2,000 alimony judgment. In a

13

post-divorce filing, the wife sought to have the $415 outstanding balance from the earlier maintenance order collected through garnishment. 155 Kan. at 43.

The husband moved to have the garnishment proceedings dismissed and argued that by its final divorce and maintenance orders, the trial court determined that the wife was entitled to alimony in the total amount of $2,000 and the order for separate maintenance should be deemed to have merged into that final alimony order. The district court overruled the husband's motion, and he pursued an appeal.

In analyzing the matter, the *Calkins* court observed that the wife made no mention to the trial court of the past-due balance on the previous order for separate maintenance nor did she introduce any evidence of the same during the course of the trial. The court concluded that the judgment of the district court in the wife's favor could not be permitted to stand. 155 Kan. at 47. As support for its conclusion, it highlighted the "general and well-established policy" of this state that requires every question at issue in a divorce action "to be finally settled and adjudicated at the time the marital tie is dissolved." *Calkins*, 155 Kan. at 45 (citing *Roe v. Roe*, 52 Kan. 724, 35 P. 808 [1894]; *McCormick v. McCormick*, 82 Kan. 31, 107 P. 546 [1910]; *Heivly v. Miller*, 102 Kan. 313, 169 P. 1141 [1918]). The court further noted that all matters subject to proper consideration in a divorce action must be presented and if they are not, the final judgment is considered comprehensive and acts as a complete bar as though those neglected issues were fully litigated and ruled upon. Thus, after the divorce was granted no award of alimony to the wife could be made or changed. *Calkins*, 155 Kan. at 45; see also *Mayfield v. Gray*, 138 Kan. 156, 23 P.2d 498 (1933) (Husband was barred from maintaining an action against his wife on a note he failed to litigate during the divorce action.); *Zellner v. Zellner*, 155 Kan. 530, 533, 127 P.2d 428 (1942) ("[A] party to the marital relation is required to assert every existing right or claim against the other party thereto at the time the marital relationship is finally terminated."); *Farmer v. Farmer*, 177 Kan. 657, 658, 281 P.2d

14

1075 (1955) (All matters which properly may be presented and considered in a divorce action must be presented.).

In this case, it was not incumbent upon the district court to offer L.S. a safety net and provide relief through the back door that it was precluded from providing through the front. Its decision to do so by awarding arrearages for temporary child support that was never litigated or ordered was legally flawed and constitutes an abuse of discretion.

Even if we were to view the court's decision as merely a modification pursuant to K.S.A. 60-259, which we do not, its decision still must be reversed because it transcended the permissible modification landscape.

*The district court's decision violates K.S.A. 23-3005.*

Although K.S.A. 2023 Supp. 60-259(f) provides authority for a district court to alter or amend judgments in general, K.S.A. 23-3005 is specific to the district court's authority to modify child support orders. This specific provision controls over a general statute. See *State ex rel. Schmidt v. Governor Kelly*, 309 Kan. 887, 898, 441 P.3d 67 (2019); see also *In re Marriage of Brown*, 295 Kan. 966, 975, 291 P.3d 55 (2012) (finding interlocutory child support modification statute controlled over statute authorizing district court to generally modify interlocutory orders).

A district court may modify any prior child support order within three years when a material change in circumstances is shown. K.S.A. 23-3005(a). The child support modification may be retroactive, *but only to a date no further back than one month after the movant files the motion for modification*. K.S.A. 23-3005(b). A panel from this court has interpreted the predecessor to K.S.A. 23-3005(b) to apply to modifications of temporary orders. *In re Marriage of Tah*, No. 91,236, 2004 WL 2451455, at *2 (Kan. App. 2004) (unpublished opinion).

15

The district court in this case clearly did not follow the statutory directive of K.S.A. 23-3005 governing the timing for modification of a child support order. The application of K.S.A. 23-3005 was never raised during the litigation for this issue, and on appeal, neither party addresses the child support modification statute. Instead, L.S. sought modification of the child support order under K.S.A. 2023 Supp. 60-259(f), and the district court treated modification of a child support order as a motion to alter or amend under K.S.A. 2023 Supp. 60-259(f).

Again, for a district court's discretionary decision to receive a full measure of deference, its decision must arise out of a correct understanding of the law. *In re Marriage of Welter*, 58 Kan. App. 2d at 688. Kansas law provides that child support may be modified whenever circumstances make such a change proper, "but the modification operates prospectively only. [Citations omitted.]" *In re Marriage of Schoby*, 269 Kan. 114, 117, 4 P.3d 604 (2000). Kansas courts have noted that they "have rarely allowed a retroactive order for child support." In re Marriage of Bunting, 259 Kan. 404, 410, 912 P.2d 165 (1996). Admittedly, most caselaw concerns modifications to the amount and length of child support, not modifications to the start date of child support.

Here, the district court's decision to amend the child support order to include retroactive payments did not comport with the provisions of K.S.A. 23-3005(b). It merely assumed that if it had heard L.S.'s motion for temporary support, then it would have granted temporary support, and thus, the start date for child support payments should have begun in March 2020 when L.S. filed her motion for temporary support. But had the district court correctly invoked K.S.A. 23-3005(b), its modification would only have been able to assess child support retroactive to February 1, 2022—the first day of the month following L.S.'s motion seeking modification. See *In re Marriage of Katona*, No. 109,429, 2014 WL 1612458, at *3 (Kan. App. 2014) (unpublished opinion) ("Clearly the trial court did not have the statutory authority to backdate the modification of the existing

16

support order any earlier than August 7, 2011. Any argument against this is simply contrary to the plain language of K.S.A. 2013 Supp. 23-3005[b]".).

Further, the district court's action cannot be described as simply a modification to the temporary child support order because no such order ever existed with which to be subject to modification. Again, over a year passed from when L.S. filed her motion for temporary child support until the final trial and she never requested a hearing to address its merits. As previously analyzed at length, the issue was not included in the pretrial order, L.S. never raised the issue at trial, and the district court never ruled on the matter before a final judgment was entered. The district court then stated, after the final judgment had already been entered, that it would have granted temporary support if a hearing had occurred and essentially absorbed a temporary child support award into the final child support order. But K.S.A. 23-3005(b) and Kansas caselaw clearly prohibits modification of a child support order to retroactively include temporary child support that the district court never ordered before the final judgment. See *In re Henson*, 58 Kan. App. 2d 167, 183, 464 P.3d 963 (2020); *In re Marriage of Ralph*, No. 122,832, 2021 WL 936056, at *8 (Kan. App. 2021) (unpublished opinion).

Because the district court retroactively ordered child support to include the period before the final judgment was entered, the district court violated K.S.A. 23-3005(b) and, therefore, abused its discretion. This analysis offers additional justification for vacating the judgment against D.J. for child support payments from March 2020 to December 2021.

*The district court's ruling was erroneous under K.S.A. 2023 Supp. 60-259(f).*

As an endeavor in completeness, we also reviewed the district court's decision under the framework for a motion to alter or amend judgment under K.S.A. 2023 Supp. 60-259(f) as L.S. proposed, and we arrived at the same conclusion. That is, the district

court abused its discretion in granting L.S.'s motion on a theory that was not available—imposing an interlocutory order after litigation had already drawn to a close.

The purpose of a motion to alter or amend a judgment under K.S.A. 2023 Supp. 60-259(f) is to allow the district court the chance to correct a prior error, to reconsider its findings of fact and conclusions of law, and to make appropriate amendments and alterations to the order at issue. See *In re Marriage of Willenberg*, 271 Kan. 906, 910, 26 P.3d 684 (2001). It is not an opportunity to present additional evidence that could have, with reasonable diligence, been previously submitted prior to the entry of the final order. *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, Syl. ¶ 20, 419 P.3d 608 (2018). "[W]e have previously recognized that motions to alter or amend [judgment] may properly be denied where the moving party could have, with reasonable diligence, presented the argument prior to the verdict." *Wenrich v. Employers Mut. Ins. Co.*, 35 Kan. App. 2d 582, 590, 132 P.3d 970 (2006).

We glean some measure of guidance from *In re Marriage of Rindels*, No. 100,940, 2010 WL 445691 (Kan. App. 2010) (unpublished opinion). In that case, Kendon and Angela Rindels divorced after five years of marriage. Angela filed a posttrial motion to reconsider in order to challenge the district court's division of the marital estate. Included among the issues raised was Angela's first time claim that Kendon committed fraud when he neglected to include certain information in his DRA. Although Angela conceded that the information was admitted and available at trial, she argued that its late addition to the record nevertheless made it impossible for the district court to conduct an adequate review. Her motion was denied.

Angela appealed and asked this court to analyze the denial of her motion. In declining to overturn the district court's decision concerning her fraud claim, this court found that Angela's argument failed for three reasons, the first of which was her delay in raising the issue. *In re Marriage of Rindels*, 2010 WL 445691, at *7. Specifically,

18

because she failed to raise it at trial, she was precluded from raising it in her motion for reconsideration. "Consequently, a district court properly denies a motion for reconsideration 'where the moving party could have, with reasonable diligence, presented the argument prior to the verdict.'" 2010 WL 445691, at *7 (quoting *Wenrich*, 35 Kan. App. 2d at 590).

L.S. had over a year before the final judgment was entered to request that the district court hear her motion for temporary child support. There was ample opportunity in that timeframe for L.S. to raise this issue, yet she failed to do so in the pretrial order or at trial. In fact, during the pretrial conference she joined D.J. in assuring the court there were no pretrial motions outstanding. The district court's failure to rule on this motion was not an error in its judgment but seemingly the product of L.S.'s oversight. It was not the court's responsibility, nor was it within the purview of its role, to fashion a way to correct L.S.'s missteps. The district court's decision to essentially enter what typically constitutes an interlocutory order after the final judgment was entered, without a full hearing on the matter, was unreasonable and legally untenable.

L.S. highlights the impact that the lack of an order would have as follows: "In the interim, three years went by without any child support being paid." We are not similarly moved by that passage of time. For example, in *In re Marriage of Clark*, No. 123,233, 2022 WL 881722, at *1 (Kan. App. 2022) (unpublished opinion), the litigation was stalled for 18 years. That nearly two-decade span helps to illustrate the difficulty of continuing with no interlocutory order only for the district court to eventually alter or amend the final judgment to add an interlocutory order for temporary child support. If this case lingered on for 18 years, then L.S. would have had financial responsibility for the children for 18 years while D.J. had no obligation to pay temporary child support, only for the district court at the end of litigation to enter a final judgment and then alter it to add 18 years of back child support. This is the worst of all worlds for both parents. The better rule is to insist that such orders be confined to their interlocutory structure.

19

In short, this case involves the district court's true mistake and its false belief. In truth, the district court erred by entering an interlocutory order after litigation ended and granting temporary child support under K.S.A. 23-2707(a)(3). But also, the district court seemed to operate under the mistaken belief that it was altering or amending the final judgment, simply changing the start date for final child support. Even if this mistaken belief were correct, the district court's action would still be error because K.S.A. 23-3005(b) limits the ability of a district court to make child support retroactive. Again, as Kansas caselaw makes clear, child support modifications may only operate prospectively. See *In re Marriage of Brown*, 295 Kan. at 976-77; *In re Marriage of Leedy*, 279 Kan. 311, 319, 109 P.3d 1130 (2005); *In re Marriage of Martin*, 32 Kan. App. 2d 1141, 1143, 95 P.3d 130 (2004). Because the district court erred by entering an interlocutory order for temporary child support after the close of litigation, its order for D.J. to pay child support from March 2020 to December 2021 must be vacated.

*The court's entry of a modified final order without first fully litigating the matter resulted in a violation of D.J.'s right to due process as it deprived him of the right to be heard.*

D.J. also argues that the district court's decision to retroactively grant temporary child support violated his due process rights because he was unable to challenge the amount or duration of support. L.S. responds that D.J. received notice and an opportunity to be heard on the issue of temporary child support at the hearing on the motion to alter or amend.

Whether the district court violated an individual's due process rights is a question of law subject to unlimited review. *Requena v. State*, 310 Kan. 105, 108, 444 P.3d 918 (2019).

The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

U.S. Const. amend. XIV, § 1. "Due process requires that notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re L.S.*, 14 Kan. App. 2d 261, 263, 788 P.2d 875 (1990) (quoting *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 [1950]).

The Kansas Supreme Court has held that a proper motion, notice to the adverse party, and an opportunity to be heard are prerequisites to a modification of a child support order. *Brady v. Brady*, 225 Kan. 485, 489, 592 P.2d 865 (1979). More recently, a panel from this court determined that the party opposing the motion to modify is required to file its own domestic relation affidavit and child support worksheet. *In re Marriage of Fuller*, 52 Kan. App. 2d 721, 726, 371 P.3d 964 (2016); see *In re Marriage of Ralph*, 2021 WL 936056, at *7-8. This reasoning stems from Supreme Court Rule 139(f) (2023 Kan. S. Ct. R. at 221) requiring both parties to file a domestic relations affidavit when a motion to modify an existing child support order is before the district court.

Although the district court held a hearing on the motion to alter or amend, neither party submitted a domestic relations affidavit or child support worksheet, nor did the district court ask the parties to do so. When the district court retroactively ordered child support, it simply applied the same child support calculation that it used in the December 2021 child support order. Thus, D.J. did not receive proper notice of the child support amount sought against him, and he did not have the opportunity to be meaningfully heard because the district court was never able to consider his domestic relations affidavit. While the argument could be made that D.J. had received notice from the child support worksheet filed with L.S.'s motion for temporary child support in February 2020, this does not negate that the parties failed to file updated domestic relations affidavits and the district court failed to consider the affidavits in calculating the child support amount.

Additionally, there are severe due process concerns raised by the district court's claim that if it had heard L.S.'s motion for temporary support, then it would have granted it, and therefore, this was sufficient justification to retroactively absorb the temporary child support award into the final child support order. While it may be entirely true that the district court would have granted temporary child support, this line of reasoning totally defeats the procedural due process protections afforded by the Fourteenth Amendment. The district court based its decision to modify the child support order primarily on its decision to retroactively grant a temporary order that D.J. never had the opportunity to defend against or engage in any meaningful litigation.

*A district court may properly utilize K.S.A. 60-260(b) to set aside a final order intended to establish a party's child support obligation.*

The final issue we must resolve is that raised by L.S. in her cross-appeal concerning whether the district court properly granted D.J.'s motion filed under K.S.A. 60-260(b) to set aside child support under the parties' initial settlement agreement as opposed to simply modifying the order. Kansas district courts have broad discretion to adjust the rights of parties in a divorce action, and that determination will not be disturbed by the appellate courts in the absence of an abuse of that discretion. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. at 590.

District courts may modify final child support awards granted under K.S.A. 23-3001 and K.S.A. 23-3002. A parent may move for such modification under K.S.A. 23-3005(a) and the court may grant the request when a material change of circumstances is shown. Any motion for child support or request to adjust the same must include a domestic relations affidavit and proposed child support worksheet. K.S.A. 23-3002(b).

22

On appeal, L.S. asks us to resolve a crucial question: what is the effect of setting aside the court's final judgment through K.S.A. 60-260(b)? This creature of civil procedure presents conceptual difficulties in a family law context. The district court here did not attempt to set aside the divorce decree itself. Rather, it confined its ruling to the parties' settlement agreement.

The legal effect of setting aside the judgment was that the order requiring D.J. to pay child support no longer existed. Which explains his lack of child support payments in December 2019 and the first two months of 2020—he was under no legal obligation to provide them. "A successful request for relief vacates the order or judgment but leaves the underlying case and the original pleadings intact." *In re Estate of Rickabaugh*, 305 Kan. 921, Syl. ¶ 2, 390 P.3d 19 (2017). This rule remains relatively unchanged from a 1963 amendment to the Code of Civil Procedure. When a district court sets aside a judgment, the parties are restored to the status they enjoyed prior to that judgment, and the issues between them stand again for trial or such other disposition as may be appropriate to the situation. *Ahern v. Fankhouser*, 189 Kan. 506, 508, 370 P.2d 98 (1962); *Dimit v. Bradshaw*, 186 Kan. 220, 222, 350 P.2d 131 (1960); see *Voth v. Thompson*, 178 Kan. 539, 542-43, 289 P.2d 733 (1955). This proposition "is too well grounded to require serious consideration here." *Hoffman v. Hoffman*, 156 Kan. 647, 653, 135 P.2d 887 (1943) (citing *Standard Life Ass'n v. Merrill*, 147 Kan. 121, Syl. ¶ 1, 75 P.2d 825 (1938). Thus, upon granting a K.S.A. 60-260(b) motion, the district court metaphorically resets the parties back in time to the moment before the judgment was entered.

L.S. takes the firm stance in her cross-appeal that under Kansas law, D.J. had but a single avenue available for relief and that was to move to modify the child support order pursuant to K.S.A. 23-3005; setting it aside was not an option available to him. And to the extent he did seek to set it aside, the district court had the obligation to proactively right the ship and construe the request as one to modify the order under K.S.A. 23-3005.

23

According to L.S., while the district court may have mistakenly believed that its order granting relief from the divorce decree invalidated its original orders, it did not, and to find otherwise effectively ignored the children's best interests and violated its duty to protect those rights under the Kansas Family Law Code. Thus, L.S.'s argument goes, the district court committed a legal error and thereby abused its discretion when it actually or impliedly terminated, rather than revised and reformed the child support amount the parties agreed to in their marital settlement agreement once it became clear the child support worksheet was not accurate.

The primary hurdle L.S. faces is the lack of legal authority undergirding her assertion that K.S.A. 60-260(b) was not a mechanism available to the district court here. The authorities she directs us to as support for her contention do not persuade us to adopt her position. L.S. asserts that "[T]he purpose of [K.S.A.] 60-260(b) is not to put a party at a disadvantage or prejudice them, but to correct the entry that was made to reflect what it should have been (unless the court finds the judgment to be void, unenforceable, or without jurisdiction)" and directs us to *Automatic Feeder Co. v. Tobey*, 221 Kan. 17, 20, 558 P.2d 101 (1976), as support for that assertion. But *Automatic Feeder Co.* does not state that the purpose of K.S.A. 60-260(b) is merely to correct entries. Rather, it also refers to void judgments, as L.S. does in her parenthetical, but the citation seems to relate only to that parenthetical at the end of her sentence. The main proposition of L.S.'s sentence—that K.S.A. 60-260(b) corrects the entry to reflect what it should have been— derives no support from *Automatic Feeder Co.* or in the plain text of the statute, which states that a district court may correct errors in judgments under K.S.A. 60-260(a), not (b).

L.S. also directs our attention to *In re Marriage of Kirk*, 24 Kan. App. 2d 31, 941 P.2d 385 (1997). But again, the central question we must resolve is the resulting effect on child support when the district court sets a judgment aside under K.S.A. 60-260(b)(3). And *In re Marriage of Kirk* does not shed any light on that question. In that case, the

24

district court denied the wife's motion to set aside the parties' separation and property settlement agreement. So, the case necessarily does not offer any insight or guidance into the effect of granting such a motion. Further, the *Kirk* case makes no mention of children or child support. Thus, *Kirk* offers no support for L.S.'s contention that when a district court sets aside an order for child support, an obligation to pay child support remains intact.

L.S. also attempts to rely on *Skillett v. Sierra*, 30 Kan. App. 2d 1041, 53 P.3d 1234 (2002), to support her claim that when a trial court decides to grant relief from the provisions of a marital settlement agreement because of an error that occurred in the course of its approval, it does not mean the past obligations are nullified, it means they are simply held in abeyance until they can be reformulated. But in *Skillett*, the district court did not set aside a judgment under K.S.A. 60-260(b) and there was no marital settlement agreement to even set aside because *Skillett* was a paternity case.

Finally, L.S. encourages us to review *In re Marriage of Schoby*, 269 Kan. 114, 4 P.3d 604 (2000). In that case, David and Donna Schoby entered into a property settlement agreement which stated that child support payments would cease when a minor child married. The question analyzed on appeal was whether David was required to affirmatively move the district court to terminate his support obligation when his child married. David argued that under the terms of the parties' agreement, his child support obligation terminated automatically when the child married. Our Supreme Court held otherwise and stated: "It is beyond the power of a father to deprive the court by private agreement of its right to make provisions for the support of the minor children, as the children's welfare requires." 269 Kan. 114, Syl. ¶ 3.

L.S. cites *Schoby* for an argument which is not supported by its holding. That is, she states that: "Accrued child support cannot be modified or eliminated under K.S.A. 60-260(b)(6) unless the court finds that the movant had no parental obligation to the

25

child." But our review of *Schoby* reveals nothing along those lines. Rather, it simply addresses the ability of parents to contractually reduce or terminate child support. Truly, in terms of a district court's ability to modify or eliminate child support, *Schoby* seemingly runs contrary to L.S.'s proposition. That court stated that, "Divorced parents cannot legally reduce child support or terminate the obligation by a contractual agreement or otherwise. It is a right of the child and can only be reduced or terminated by court order." 269 Kan. 114, Syl. ¶ 1. Thus, L.S.'s contention that a court order under K.S.A. 60-260(b) cannot provide relief from child support finds no support in *Schoby*.

In total, L.S. has offered no legal support for her position that a final child support award is insulated and off-limits when a district court sets aside a judgment under K.S.A. 60-260(b)(3). Even so, L.S.'s argument also fails because it runs p against contrary authority. For that we look to *In re Marriage of Hunt*, 10 Kan. App. 2d 254, 697 P.2d 80 (1985), where this court explained that relief from judgment under K.S.A. 60-260(b) is available in divorce proceedings. The operative rule distinguishing between modifying a judgment and setting it aside is the following:

> "Proceedings to modify a divorce decree based on matters occurring after the decree are to be brought under [predecessor to K.S.A. 23-2903 (modify maintenance) and K.S.A. 23-3005 (modify child support)] and are subject to its limitations. However, where relief is sought because of facts existing at the time of the decree which, if known to the court, would have brought about a different result, relief is available under K.S.A. 60-260(b)." *Hunt*, 10 Kan. App. 2d at 259.

Our Supreme Court quoted this rule in a later case and added the following: "We see no reason why this distinction should not be applied to a child support judgment as well as a maintenance judgment." *In re Marriage of Leedy*, 279 Kan. at 321. Thus, a party may seek, and the district court may grant, relief from judgment under K.S.A. 60-260(b) if "facts existing at the time of the decree which, if known to the court, would have brought about a different result." 279 Kan. at 321.

26

In *Leedy*, the district court set aside an order for child support which Robert D. Leedy owed to Dana Wassar so that they might recalculate his arrearages. Several months later, a new final judgment on child support was entered with corrected figures. Wassar appealed and presented an argument similar to what L.S. brings to us. Wassar asserted that the district court erred because it could only modify child support prospectively, not relieve the obligation. The argument was rejected, and the reviewing court instead found that "Wassar's reliance, however, fails to take into account that the purpose of K.S.A. 60-260 is to provide relief from judgments or orders." 279 Kan. at 319. In arriving at its conclusion, our Supreme Court walked through the six statutory grounds for relief under K.S.A. 60-260(b)(1)-(6) and concluded that subsection (b)(3) provided appropriate grounds for relief because Wassar failed to disclose a reduction in childcare costs. 279 Kan. at 322-23.

Applying the rule from *Hunt* and *Leedy* to the facts here, K.S.A. 60-260(b) was the appropriate vehicle for the district court's order. D.J. argued to the district court that L.S. had misrepresented the parties' finances at the time of the settlement agreement. L.S. admits that the financial disclosures were inaccurate, although she denies fraud. Determining the parties' finances at the time of the divorce decree is not a "[p]roceeding[] to modify a divorce decree based on matters occurring after the decree," requiring a motion to modify under K.S.A. 23-3005. *Hunt*, 10 Kan. App. 2d at 259. Instead, D.J. sought relief based on facts—the parties' finances—which existed at the time of the decree and, if known to the court, would have brought about a different result. See *Leedy*, 279 Kan. at 321.

Thus, the district court in this case did not err in using K.S.A. 60-260 to set aside the judgment in this case. And it matters not that the judgment at issue was based upon a settlement agreement. See *Reimer v. Davis*, 224 Kan. 225, 228, 580 P.2d 81 (1978) (K.S.A. 60-260[b] motion is the proper vehicle to use to challenge a judgment based on a settlement agreement). A district court may vacate a final order for child support and

27

when it does, it effectively means that no order of support was entered, and the parties resume the position they were in before the district court entered its judgment. Here, L.S. had not requested an interlocutory order for temporary child support under K.S.A. 23-2707(a)(3), so there was not a temporary child support station for her to return to. The district court here entered a final judgment for child support under K.S.A. 23-3001, but then set it aside in November 2019, and when it did so, there was no longer any order in existence which obligated D.J. to pay child support.

The lens through which we analyze this issue is whether setting aside the order amounted to an abuse of discretion. We decline to find that this decision was either factually or legally flawed, nor was it unreasonable. The district court determined that errors contained in the child support worksheet resulted in miscalculations of the child support amount D.J. was obligated to pay. Thus, it had the authority under K.S.A. 60-260(b)(6) to set that order aside.

L.S.'S REQUEST FOR APPELLATE ATTORNEY FEES

Following oral argument in this matter, L.S. filed a motion for appellate attorney fees together with the required affidavit of her appellate counsel and an itemization of his fees under Supreme Court Rule 7.07(b)(2) (2023 Kan. S. Ct. R. at 52). D.J. did not submit a response in opposition to L.S.'s motion.

A Kansas court cannot "award attorney fees unless a statute authorizes the award or there is an agreement between the parties allowing attorney fees." *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). This issue constitutes a question of law over which we exercise unlimited review. *In re Estate of Oroke*, 310 Kan. 305, 317, 445 P.3d 742 (2019).

28

L.S. seeks appellate attorney fees through the operation of Rule 7.07(b) and (c). Subsection (b) relates to fees generally and allows an award of such fees in those cases where the district court had the authority to award the same. Subsection (c) addresses the imposition of fees when an appeal is frivolous or motivated by the desire to either harass or delay. It allows for the assessment of fees against appellant, his counsel, or both.

*Supreme Court Rule 7.07(b)*

K.S.A. 23-2715 vests the divorce court with the authority to award costs and attorney fees "to either party as justice and equity require" and in turn triggers the application of Supreme Court Rule 7.07(b). See *In re Marriage of Patterson*, 22 Kan. App. 2d 522, 534, 920 P.2d 450 (1996). Although we presume the parties here did not intend to overburden the other financially, the fact remains that the district court was not provided with accurate calculations from which to draft a proper child support order and L.S. undeniably shoulders some of the blame for that issue. Therefore, she had the opportunity to prevent some of the litigation costs for which she now seeks reimbursement from D.J. by ensuring the settlement agreement and divorce decree were drafted with greater precision from the outset, and that all relevant claims for support were entered in a timely manner. She failed to do so. Those claims then litigated on appeal were not resolved favorably to L.S. Accordingly, we find it inappropriate to grant her request for appellate attorney fees under Rule 7.07(b).

*Supreme Court Rule 7.07(c)*

L.S. contends that D.J.'s appeal is not only frivolous, but also pursued for the singular purpose of subjecting her to harassment and delay. We are not persuaded.

An appeal is frivolous if it fails to present any "justiciable question" and is "readily recognized as devoid of merit," meaning "there is little prospect" of success. *Blank v.*

*Chawla*, 234 Kan. 975, Syl. ¶ 5, 678 P.2d 162 (1984). Cases applying this definition have denied attorney fees when an appeal raised unsettled issues or novel legal issues. 234 Kan. at 982; see *Geiger v. Wallace*, 233 Kan. 656, 662, 664 P.2d 846 (1983). Unsettled or novel legal issues can encompass unresolved issues of statutory interpretation. *In re Marriage of Hoffman*, 28 Kan. App. 2d 156, 160, 12 P.3d 905 (2000). Moreover, because Rule 7.07(c) requires a finding that "an appeal" is frivolous, the presence of even a single nonfrivolous issue places the entire appeal outside the sphere of frivolity. See *Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 647-48, 621 P.2d 411 (1980) (denying attorney fees for an appeal that was not totally devoid of merit).

As evidenced by our extensive analysis and ruling set out above, we do not share L.S.'s perception that the issues D.J. raised in this appeal are frivolous. Accordingly, she is not entitled to attorney fees under that theory.

L.S. also argues that fees for harassment or delay under Rule 7.07(c) are warranted because D.J.'s "overarching purpose in this appeal" was to "punish [her] for divorcing him." For support she first asserts that D.J. brought this appeal to challenge the district court's decision in doing exactly what D.J. requested—redetermine the amount of child support he was required to pay. As revealed by our foregoing analysis, the district court's recalculation of support once the proper criteria were submitted transcended the boundaries of what it was permitted to include as part of the final child support order.

L.S. attempts to draw further support for her request by characterizing the factual statement in D.J.'s brief to this court as "vitriolic." We acknowledge that domestic matters are often traumatic for the parties and particular actions are viewed from an emotionally charged perspective. But from our neutral vantage point the factual recitation we reviewed falls short of the label L.S. has assigned to it.

Finally, L.S. advises that when arriving at our decision on this matter we should be mindful of "the reams of motions D.J. filed in the district court after that court decided to redetermine the financial issues contained in the marital settlement agreement. . . ." We do not disagree that tactics of that nature arguably may evidence harassment or delay in the district court, but they fail to establish that this appeal was taken for the purpose of harassment or delay. L.S. cannot recover appellate attorney fees under Rule 7.07(c) because D.J.'s appeal was neither frivolous nor shown to have been taken for harassment or delay.

CONCLUSION

This case came to us as a result of the district court's decision to modify a final child support order to include arrearages for temporary child support that was neither litigated nor imposed during the pendency of the divorce proceedings. This it cannot do. In imposing that modification, the district court disregarded long-standing legal principles surrounding pretrial orders under K.S.A. 2023 Supp. 60-216, violated the retroactivity limitations on child support modifications under K.S.A. 23-3005, and impermissibly entertained a new issue raised for the first time in a motion to alter or amend under K.S.A. 2023 Supp. 60-259(f). The issue before us required us to determine whether the district court's delayed child support modification constituted an abuse of discretion. The aforementioned legal errors reflect that such abuse occurred. Accordingly, the child support order imposing an obligation for D.J. to pay arrearages in temporary child support must be vacated.

Reversed and vacated.

31

* * *

PICKERING, J., dissenting:  Respectfully, I dissent because the district court did not abuse its discretion in ordering D.J. to pay child support at a date earlier than the final decree. What guides this decision is the unquestionable legal maxim that child support is the right of the child. *Brady v. Brady*, 225 Kan. 485, 488, 592 P.2d 865 (1979).

Our Kansas courts recognize that a parent has a "moral and legal obligation to [a] minor child." *Strecker v. Wilkinson*, 220 Kan. 292, 298, 552 P.2d 979 (1976). Because there had been no child support payments in a three-year period—after the court had vacated the initial child support order—the district court's ruling attempted to address this delinquency. Accordingly, we should recognize, as did the district court, that there are equitable considerations weighing in L.S.'s favor, and thus I would affirm the district court's ruling.

*A district court acts with broad judicial discretion.*

"Broadly, a district court acts with judicial discretion in allocating marital property and otherwise settling a divorcing couple's financial affairs, including matters of child support and maintenance." *In re Marriage of Clark*, No. 123,233, 2022 WL 881722, at *2 (Kan. App. 2022) (unpublished opinion). As the *Clark* panel explained:  "The allocation should be 'equitable' and 'just.' See K.S.A. 2020 Supp. 23-2711(a)(2) (final decree to include order for 'equitable division of . . . property'); K.S.A. 2020 Supp. 23-2802(c) (court 'to make a just and reasonable division of property')." *In re Marriage of Clark*, 2022 WL 881722, at *2.

*The importance of a child's right to child support.*

It is universally recognized that a minor child of divorced parents is entitled to child support, which provides for the child's needs. See *In re Marriage of Martin*, 32 Kan. App. 2d 1141, 1143, 95 P.3d 130 (2004); Kansas Child Support Guidelines § II.A. (2024 Kan. S. Ct. R. at 107). Acknowledging the importance of child support, our Supreme Court has characterized child support as "a matter of social concern" and a "moral and legal obligation" that a parent owes to the child through the child's minority. *Strecker*, 220 Kan. at 298.

We cannot overlook the importance of a parent's legal responsibility to provide child support. In fact, payment of child support is so critical to the right of the child that, under Kansas adoption law, the failure of a father to financially support a child over a two-year period is justification for terminating the father's parental rights. K.S.A. 2023 Supp. 59-2136(h)(3) provides:

> "In determining whether the father has failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the petition for adoption, there shall be a rebuttable presumption that if the father, after having knowledge of the child's birth, has *knowingly failed to provide a substantial portion of the child support as required by judicial decree*, when financially able to do so, for a period of two years immediately preceding the filing of the petition for adoption, then such father has failed or refused to assume the duties of a parent." (Emphasis added.)

*District courts can address delinquencies in child support payments.*

Other panels of this court have recognized that a district court can address delinquencies in payments "by giving [the party owed] the same or less than he or she otherwise would have gotten, effectively voiding the delinquency." *In re Marriage of Clark*, 2022 WL 881722, at *7.

33

In *In re Marriage of Colgan*, No. 109,430, 2014 WL 4080072, at *4 (Kan. App. 2014) (unpublished opinion), among other issues, another panel of this court upheld the district court's ruling that awarded permanent maintenance to begin before the final divorce decree issued. There the husband argued that "the district court improperly made his unpaid temporary maintenance a 'final judgment' by selecting a retroactive starting date for the permanent maintenance order." 2014 WL 4080072, at *4. The district court had set the amount of permanent maintenance in the final judgment to account for delinquencies owed from temporary orders. The wife filed a petition for divorce on October 25, 2010, and the district court chose the start date of December 1, 2010.

In reaching its ruling, the *Colgan* panel noted: "In its discretion, the district court was free to set the start date for the permanent maintenance at any time after the petition for divorce was filed." 2014 WL 4080072, at *4. In other words, "[t]he district court had the discretion to leave the temporary maintenance order in place with its accumulating judgment or incorporate it into [the husband's] obligation to pay permanent maintenance." 2014 WL 4080072, at *4. The panel found that the district court had authority to merge temporary maintenance into permanent maintenance awarded in the final judgment. 2014 WL 4080072, at *4. I recognize *Colgan* relates to a spouse's maintenance, but I believe the principle is applicable to the instant case.

Likewise, the district court in this case addressed the delinquency between L.S.'s initial motion for temporary child support and the final decree. At the November 22, 2021 final hearing on the issues of property division and child support, L.S. testified that for a period of over three years, D.J. had not paid child support. Notably, the majority opinion is unmoved by the three-year discrepancy here: "L.S. highlights the impact that the lack of an order would have as follows: 'In the interim, three years went by without any child support being paid.' We are not similarly moved by that passage of time." Slip op. at 19. And yet, our Legislature has determined that failure to provide child support for *two consecutive years* immediately preceding the filing of the petition for adoption serves as a

34

"rebuttable presumption" that that person has "failed or refused to assume the duties of a parent." K.S.A. 2023 Supp. 59-2136(h)(3). And thus, I would find that D.J.'s three-year period of nonpayment of child support is essential in determining if the district court erred in its ruling.

The district court, I would find, had the discretion to incorporate an obligation to pay child support before the final order issuance date. In understanding the uniqueness of this case, one cannot overemphasize that the district court had previously ordered child support. Yet because the court's ruling resulted in vacating the prior final settlement, child support was also vacated. While the parties were still litigating the orders that would become finalized in the second final order, but after the court had ordered the mother and father were divorced, L.S., the mother, had filed a motion for temporary child support. Due to time restraints, the court had to forego ruling on the motion. This outstanding pretrial motion was not addressed later in either the pretrial order or at the trial. The district court later stated on the record that L.S.'s motion for temporary child support would have been granted. Thus, in granting the mother's motion to modify the final decree to begin child support at an earlier beginning date, the court's order strived to rectify the mother's and its own oversight.

Additionally, in making its rulings, district courts rely on the candor of the parties. See *Cardenas v. State*, No. 122,033, 2021 WL 833992, at *4 (Kan. App. 2021) (unpublished opinion) (finding "no error in the court['s] reliance on [defense counsel's] statements of fact established in the record of the pretrial motions hearing"). As officers of the court, attorneys have a duty of candor to the court. KRPC 3.3(a)(1) (2024 Kan. S. Ct. R. at 387) (Lawyers may not "knowingly . . . make a false statement of fact or law" or fail to correct their previous materially false statements.). With neither parent here advising the district court of the outstanding motion for temporary child support, the court properly relied on counsels' statements that there were no outstanding motions. And

35

if the parties state a fact that is later determined to be untrue, as shown here, the court should have recourse to correct that misunderstanding.

Nor should D.J. be able to argue that he was without notice or was surprised by the request for child support. It remains unclear how D.J. could argue that he was surprised about the court's modified child support order even though earlier, in 2018, the court had ordered him to begin paying child support starting in January 2019. Later in 2019, D.J. moved to vacate the order under K.S.A. 60-260(f). He asked that the financial obligations be reconfigured due to the financial information errors. The only questions before the court after granting D.J.'s motion were the amount required for support of the children, property distribution, and maintenance.

D.J. attempts to frame this issue as if the district court abused its discretion by retroactively ordering "temporary" child support. But this case is uniquely different because D.J. was initially ordered to pay child support and, importantly, greatly benefited when the court granted his motion under K.S.A. 60-260(f). And he stands to benefit again by his argument that the court cannot correct an oversight and order child support.

*The majority opinion improperly relies on K.S.A. 23-3005 in its reasoning.*

The majority relies on the child support modification statute in finding an abuse of discretion. The majority opinion states that the district court "did not follow the statutory directive of K.S.A. 23-3005 governing the timing for modification of a child support order." Slip op. at 16.

K.S.A. 23-3005(a) states, in relevant part:

"[T]he court may modify any prior child support order, including any order issued in a title IV-D case, within three years of the date of the original order or a modification order,

36

where a material change in circumstances is shown, irrespective of the present domicile of the child or the parents. If more than three years has passed since the date of the original order or modification order, a material change in circumstance need not be shown."

K.S.A. 23-3005(b) discusses the retroactive limits of a court's order:

"The court may make a modification of child support retroactive to the first day of the month following the filing of the motion to modify. Any increase in support ordered effective prior to the date the court's judgment is filed shall not become a lien on real property pursuant to K.S.A. 60-2202, and amendments thereto, until the date of the order."

Later, the majority opinion states: "[H]ad the district court correctly invoked K.S.A. 23-3005(b), its modification would only have been able to assess child support retroactive to February 1, 2022." Slip op. at 16.

I disagree that the district court violated K.S.A. 23-3005. This statute generally relates to the amount of child support, not the date when the child support should begin. As stated in K.S.A. 23-3005(a), if there is "a material change in circumstances," a party may seek to modify the child support.

Unlike the circumstances under K.S.A. 23-3005, here, L.S. sought to correct the date for when child support would begin. Her motion to alter or amend was filed under K.S.A. 2023 Supp. 60-259(f), not under K.S.A. 23-3005. Nor did she claim a material change in circumstances required the court to modify the child support.

Quite telling, neither parent argues that this statute is pertinent to this issue. The majority opinion notes this. And at oral argument before the panel, both counsel for the parties stated that K.S.A. 23-3005 was not at issue. The district court's granting of L.S.'s

37

motion to amend the final order was not filed under K.S.A. 23-3005. As such, the retroactive restriction under K.S.A. 23-3005 does not apply.

*We should avoid rulings that remove a child's right to child support due to a parent's passivity.*

L.S.'s failure to follow up on her motion for temporary child support and the omission of the outstanding motion for temporary child support in the pretrial order would essentially waive D.J.'s responsibility to provide temporary child support. Yet, Kansas courts have not allowed a child's child support rights to be deemed waived by a parent's inaction or passivity. See *Peters v. Weber*, 175 Kan. 838, 844, 267 P.2d 481 (1954). After all, "'[a]n infant who cannot legally bring suit . . . can scarcely be accused of lack of diligence.'" *Fludd v. Kirkwood*, 253 Md. App. 329, 265 A.3d 1169, 1181 (2021).

A good example of this is shown in the courts' approach to the laches defense for nonpayment of child support over a lengthy period of time. "[L]aches is a defense premised on 'laxness' or 'negligence.'" 265 A.3d at 1181. Kansas is among the majority of states that "have held that laches is either heavily disfavored or completely unavailable in actions for child support or support arrears." 265 A.3d at 1181 & n.11; see *Strecker*, 220 Kan. at 298-99.

In *Peters*, 175 Kan. at 844, our Supreme Court considered whether the rights of a minor child to child support decreed in a divorce action were waived by 12 years of "inaction and passive acquiescence" on the part of the mother. The mother had moved for payment of the outstanding support payments, which had been due over a lengthy period. In response, the father argued that the defense of laches was a bar to enforcing his obligation. The *Peters* court was unwilling to find that the father was entitled to the

38

laches defense, stating that the minor child's rights "are not to be waived by the inaction and passive acquiescence on the part of the mother." 175 Kan. at 844.

And in *Strecker*, the father brought a laches defense to bar the court's enforcement of his outstanding child support obligations. Mindful of the *Peters* decision, the *Strecker* court also rejected the use of a laches defense, stating it was "unwilling to hold that the [father] may invoke the defense of laches as a bar to enforcement of his moral and legal obligation to his minor child." 220 Kan. at 298-99. A child support obligation continues through the child's minority, and an action to enforce the obligation may be brought at any time during the child's minority. *Strecker*, 220 Kan. at 298.

Taken into consideration, I would avoid a ruling based on L.S.'s failure to follow up on her outstanding motion for temporary child support and her failure to advise the district court of the outstanding temporary child support when the court issued the pretrial order. And yet when the mother, L.S., attempted to correct this oversight to ensure child support for the two children, the father, D.J., was allowed to rely on the oversight.

The majority opinion notes: "This case similarly presents a series of neglected opportunities by L.S. to ensure her issue of temporary child support was addressed. The district court's effort to insulate her from the consequences of her inaction was an abuse of discretion." Slip op. at 13.

I disagree that this is an abuse of discretion. Nor can I agree with the majority's next statement: "Our conclusion is also consistent with the longstanding law of this state." Slip op. at 13. The first case the majority cites in support, *Calkins v. Calkins*, 155 Kan. 43, 122 P.2d 750 (1942), relates to maintenance—not child support. As explained above, our Kansas courts do not support rulings denying child support payments that due to the passivity or acquiescence of a parent are *detrimental to the child.* That is not a basis for finding an abuse of discretion.

39

Similarly, we should avoid rulings that allow a parent to sidestep parental duties by taking advantage of the other's oversight for failure to vigorously pursue the relief they are seeking. As the *Strecker* court stated, child support is a parent's "moral and legal obligation." 220 Kan. at 298-99. And these rights "are not to be waived by the inaction and passive acquiescence" by a parent. *Peters*, 175 Kan. at 844. Here, the two children should not lose their right to child support due to L.S.'s passivity in addressing the temporary child support. D.J.—initially ordered to pay the support—should not unjustly benefit from L.S.'s inactions in her pursuit for temporary child support.

*We should avoid placing temporary child support under a temporal scope.*

This dissent began with the legal maxim that child support is the right of the child. *Brady*, 225 Kan. at 488. If the majority opinion stands, the children in this case will be denied their rightful child support. The term "temporary" is misleading; a child's need for support does not evaporate once that period passes. The children had a right to receive the unpaid temporary child support even if that support is provided past the temporary period. Kansas district courts have ordered parents to pay temporary child support arrearages. What's more, the unpaid temporary child support can also result in "presumed interest" having accrued from the unpaid temporary child support. See *In re Marriage of Clark*, 2022 WL 881722, at *5 (finding district court erred by concluding unpaid temporary maintenance was subject to dormancy).

Collection of unpaid child support is permitted because a child's right to that support does not diminish after that period passes. I would disagree with rulings that find because the period from March 2020 to December 2021 has passed, D.J. is no longer obliged to pay child support. These financial obligations do not become dormant.

Before I conclude, I must reiterate: If the majority ruling stands, it opens the door for others to litigate around their natural, lawful duty to support their children. Here, D.J.

40

benefited from the district court vacating the first final order. He should not benefit a second time. I would not vacate the district court's order for D.J. to begin paying child support starting on March 2020.

To conclude, this is not a case where the district court abused its discretion. As we have repeatedly stated: "The Court of Appeals will reverse a trial court's ruling on child support *only* when the trial court has abused its discretion." (Emphasis added.) *In re Marriage of Martin*, 32 Kan. App. 2d at 1143. The district court's ruling was not arbitrary, fanciful, or unreasonable, nor was it based on an error of law or fact. See *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). Therefore, I would affirm the district court's order.